VIOLA TULLIS ET AL. v. R. C. McCLARY ET AL., Appellants.

Bills and notes: PROOF OF OWNERSHIP. The production of a note 1 by the payee named therein, without indorsements, is sufficient evidence of his ownership.

Default judgment: VACATION. A simple denial of the ownership of 2 a note, based on want of information, is insufficient to require the setting aside of a default judgment entered on the note.

**Attachment:** WRONGFUL ISSUANCE: EVIDENCE. Where an attachment issued on the ground that defendant was about to remove his property from the county and refusal to pay or secure the plaintiff, proof that he intended to pay the debt before removal, that plaintiff had agreed to place the claim with another for collection and that defendant had never refused to pay or secure the debt, was sufficient to authorize a finding that the attachment was wrongfully sued out.

**Wrongful attachment:** DAMAGES. Time and money spent in preparing to defend an attachment and in procuring a delivery bond, and the use of a team in connection therewith, are elements of damage for wrongfully suing out the attachment.

*Appeal from Mahaska District Court.*— HON. BYRON W. PRESTON, Judge.

THURSDAY, JULY 13, 1905.

ACTION on a promissory note, aided by attachment. The defendants, in their answer, because of want of information, denied that plaintiff was owner of the note, and by way of counterclaim alleged that the writ of attachment was sued out wrongfully and maliciously, and prayed judgment for damages. Judgment by default was entered on the note, and the counterclaim dismissed. Subsequently a motion to set aside the dismissal of the counterclaim was sustained, but overruled in so far as it sought the same relief as to the judgment on the note. Thereafter trial was had on the issues raised by the counterclaim, resulting in a directed verdict for the plaintiff. From judgment thereon the defendants appeal.— *Reversed.*

*Carver & Wooster,* for appellants.

*McCoy & McCoy,* for appellees.

LADD, J.— The only issue raised by the answer was whether plaintiff owned the note sued on. She was the payee named therein, and its production, without indorse-

ment, for cancellation upon the entry of judgment was sufficient evidence of ownership.

As the plaintiff was put to her proof merely by a denial based solely on want of information, in the absence of any claim that the facts were otherwise, the court did not err in declining to set aside the judgment entered by default for the amount due.

The dismissal of the counterclaim was set aside, and upon the introduction of defendant's evidence a verdict was directed for the plaintiff. The grounds alleged for suing out the writ of attachment were that the principal debtor, McClary, was about to remove permanently from the county, and, although having property therein exempt from execution, refused to pay or secure the plaintiff; and that he was about to remove his property, or a part thereof, out of the county, with intent to defraud his creditors. The evidence introduced by the defendant tended to show that, though he had arranged to move into a neighboring county, he intended to pay the note before going. This was to be done by the clerk at an auction sale of his stock and other property out of the proceeds derived therefrom, and, according to his testimony, plaintiff had agreed to place the note in the clerk's hands for such purpose. This was inconsistent with any purpose to defraud, and he denied ever having refused to pay or secure the debt. The record, then, was such that the jury might have found the grounds of the attachment untrue, and that plaintiff acted without reasonable belief to the contrary.

No damages were proven, but this was not defendant's fault. After stating that he had employed counsel to defend in the attachment suit, McClary was asked the following questions: " Did you spend any time in the matter of employing counsel to defend this suit? How much time did you spend in employing counsel and advising with counsel as to your rights in the case? How much time did you spend in procuring a delivery bond? Did the delivery bond

cost you anything?". These were objected to as incompetent, immaterial, and irrelevant, and the objections sustained. They should have been overruled. The necessity of releasing the property by the execution of the delivery bond was a direct consequence of the levy of the writ, and if he spent time in obtaining it, and expended money therefor, the value of such time and the cost of the bond were proper elements of damage. So, too, was he entitled to recover the value of time reasonably expended in preparing for his defense against the attachment, if wrongfully sued out, and this included that necessarily expended in consulting his attorney. He testified that he lost a week's time from his occupation in baling hay in preparing to defend, that in going to Oskaloosa for that purpose five different times he was compelled to use his team, and was then asked: " Q. Was the time of your team worth anything? A. Yes, sir. Q. How much per day? (Same objection as before and ruling.) Q. How much per day were you earning when you were at work bailing hay? (Same objection and ruling.)" The rulings were erroneous. If his team was necessarily used in making the trip to consult counsel, the value of their use was a legitimate element of damages, and proof of what he was earning in his ordinary occupation was some evidence of the value of his time.

Because of these errors the judgment is *reversed.*