[S. F. No. 10094. In Bank.—January 9, 1923.]

ATLAS DEVELOPMENT COMPANY (a Corporation), Respondent, v. THE NATIONAL SURETY COMPANY (a Corporation), Appellant.

[1] ATTACHMENT — DISCHARGE — RECOVERY OF COSTS AND DAMAGES.— The defendant in an action in which an attachment is levied is entitled to recover from the plaintiff the costs and damages sustained by reason of the attachment, where judgment is rendered in defendant's favor and the attachment discharged for the reason that the plaintiff was not entitled thereto under the provisions of section 537 of the Code of Civil Procedure.

[2] DAMAGES — WRONGFUL POSSESSION OF PERSONAL PROPERTY. — A proper and recognized measure of damages for the wrongful taking or detention of personal property is the reasonable value of the use of the property during the period of detention.

2. Determination of value of use or rental of property, notes, Ann. Cas. 1914B, 808; 44 L. R. A. (N. S.) 499.

[3] ATTACHMENT—OIL RIG—DAMAGES—PREVENTION OF CONSUMMATION OF CONTRACT OF SALE.—In an action on an attachment bond for the wrongful attachment of an oil rig which the plaintiff had entered into a contract to sell to a corporation to be organized for oil development, for fifty thousand shares of the corporation stock, the plaintiff is not entitled to recover damages through being prevented from carrying out and realizing on such contract, such damages being remote, speculative and uncertain.

[4] ID.—WANT OF RENTAL VALUE IN COUNTY OF ATTACHMENT—EFFECT OF.—The fact that an attached oil rig cannot be further used in the county in which it is attached does not indicate that its adaptability and commercial requirement for use elsewhere would not give value to the right to possess and use it, if there is any locality within practical shipping distance where it is in demand and can command an ascertainable price.

[5] ID.—SPECULATIVE SALE—GRATUITOUS LOAN—EFFECT OF.—The fact that the owner of an attached oil rig had other plans for its disposal which involved a speculative sale, or even the gratuitous loan of the property does not prevent recovery, on an attachment bond, of the reasonable market value of its use.

[6] ID. — COST OF TRANSPORTATION — JUDICIAL NOTICE. — Courts may take judicial notice of the location of the various and numerous oil fields in California, and it may be safely concluded on the basis of common knowledge that the cost of transportation of an oil rig to a field where it would be in demand would not reduce the aggregate of the usable value of fifty dollars per day for seventy-eight days below that of a judgment for one thousand dollars.

[7] ID.—RENTAL VALUE IN COUNTY OF ATTACHMENT.—The fact that there is no rental market value for an attached oil rig in the county where it is attached does not make it without such value, where there is a demand for such property in available parts of the state at a minimum rate of fifty dollars per day, since the value in the county of attachment is the rental value where needed, less the reasonable cost of removing it to the place of use.

[8] ID.—DAMAGES—TESTIMONY OF PRESIDENT AND MANAGER OF OWNER —BASIS OF KNOWLEDGE.—Testimony of the president and active manager of the corporation owning the attached oil rig as to the loss per day by reason of the attachment based on talks had with various oil men is not hearsay.

[9] ID.—ACTION ON ATTACHMENT BOND—PLEADING—DEFAULT OF PRINCIPAL.—A complaint in an action against the surety on an attachment bond conditioned that the plaintiff in the attachment suit will pay all costs that may be awarded to the defendant and all damages sustained by reason of the attachment, which contains

no averment that the plaintiff in the attachment action has not made such payment, fails to state a cause of action.

[10] ID.—INSUFFICIENT COMPLAINT—ANSWER AND TRIAL—EFFECT OF. A judgment for the plaintiff in an action against the surety on an attachment bond will not be reversed for error in overruling the demurrer to the complaint which contained no allegation of default on the part of the plaintiff in the attachment suit, where such complaint contained succinct and definite allegations of damage, and the defendant, after its demurrer was overruled, answered and specifically denied any damage and devoted its efforts at the trial to showing that the attached property had no usable value at the place of attachment.

APPEAL from a judgment of the Superior Court of Alameda County. A. F. St. Sure, Judge. Affirmed.

The facts are stated in the opinion of the court.

Henry C. McPike for Appellant.

Dunn, White & Aiken for Respondent.

WASTE, J.—This appeal is by the defendant from a directed verdict and judgment in favor of plaintiff in a suit on an attachment bond.

The facts leading up to the present action are that for some time prior to November 12, 1919, the plaintiff had been engaged in drilling for oil in Contra Costa County and owned and used for the purpose certain oil drilling machinery and equipment. It was about to abandon this enterprise and was starting to dismantle the rig and outfit preparatory to placing it on board the cars at Antioch, in said county, for delivery in the state of Texas to one Charles L. Morrill under a contract of sale. On the date above stated, one Nellie Wheelock, an assignee, commenced an action against the plaintiff here for work and labor performed by her assignor, and caused an attachment to be levied on the rig and outfit at the oil well. The defendant became surety upon the attachment bond for one thousand dollars. Subsequently, the action of *Wheelock* v. *Atlas Development Company* was tried and decided in defendant's favor and it was therein adjudged that plaintiff take nothing by her complaint and that the defendant have judgment for its costs and that the attachment theretofore filed upon the

property be and the same was discharged, for the reason that plaintiff was not entitled thereto under the provisions of section 537 of the Code of Civil Procedure.

[1] Under this state of facts the defendant became entitled to recover from the plaintiff its costs and damages sustained by reason of the attachment.

The present action was thereafter begun against the Surety Company upon the obligation of the attachment bond.

The complaint alleges as damages arising from the attachment suit that plaintiff was deprived of the use and possession of said rig and outfit for a period of seventy-eight days and that the reasonable usable value of the same was fifty dollars per day during said period. Other claims by way of special damages were alleged, but these were subsequently waived, and the directed verdict for one thousand dollars, the full penalty of the attachment undertaking, was based solely upon the value of the use of the property while detained under the writ.

[2] We are of the opinion that this point was correctly decided. There is no ground to question that a proper and recognized measure of damages for the wrongful taking or detention of personal property is the reasonable value of the use of the property during the period of detention. (*Hurd* v. *Barnhart*, 53 Cal. 97; *McGill* v. *W. P. Fuller & Co.*, 45 Wash. 615 [88 Pac. 1038]; *McCarthy* v. *Boothe*, 2 Cal. App. 170 [83 Pac. 175]; 6 Cor. Jur. 539; Sutherland on Damages, 4th ed., secs. 512, 513.

[3] It is contended under the facts in this case that the property taken under attachment had no rental value as it was then situated. It had been in use by the plaintiff in unsuccessfully exploring for oil in a field where no oil has been found. The work had been abandoned and the oil rig was being taken down for removal. The plaintiff had entered into a contract to sell the outfit to a corporation to be organized in Texas for oil development in that state and was to be paid with fifty thousand shares of the corporation stock. It is urged on behalf of defendant that the plaintiff could make no further use of this property in Contra Costa County, but was bound by its contract to ship it to Texas, and that its damages, if any, were through being prevented from carrying out and realizing on its

contract. It is clear at once that such a measure of damages, particularly when not shown to have been within the contemplation of the surety corporation, would be remote, speculative and uncertain. If the fact of the location of this property in an unproductive field and the existence of a contract to remove it to Texas could be considered for any purpose, it would be to admit the evidence of the rental value of such an oil rig in Texas. [4] On the other hand, the fact that the oil rig could not be used further in Contra Costa County does not indicate that its adaptability and commercial requirement for use elsewhere would not give value to the right to possess and use it. One might own a snow plow in the Imperial Valley or a sawmill in the Mojave Desert, yet their possession could not be said to be without value if there was any locality within practical shipping distance where such machinery was in demand and would command an ascertainable price.

[5] Neither would the fact that the owner had other plans for its disposal which involved a speculative sale, or even the gratuitous loan of his property, prevent his recovery of the reasonable market value of its use.

In this case the undisputed testimony is to the effect that in the oil fields of California, as well as those of Texas, such an oil rig outfit has the rental value of from one hundred dollars to one hundred and twenty-five dollars per day. The plaintiff, for the purposes of this case, placed the value at fifty dollars per day for the seventy-eight days, showing at this rate an aggregate amount over three times as great as the judgment.

[6] It is true that no deduction was made from the values testified to for cost of transporting the outfit to oil fields where it would be in demand. But the courts may take judicial notice of the location of the various and numerous oil fields of California, and it may be safely concluded on the basis of common knowledge that the cost of transportation would not reduce the aggregate of the values testified to below the one thousand dollars of the judgment.

[7] We cannot assent to the doctrine advanced that, because there was no rental market for such an oil rig in Contra Costa County, it must be held to have been without such value, when the evidence showed that there

was a demand for such property in available parts of the state at a minimum rate of fifty dollars per day. The value of such an outfit in Contra Costa County would be such rental value where needed, less the reasonable cost of removing it to the place of use.

[8] The witness Moberry, who testified as to the value of the use of the oil rig in California, was the president of the plaintiff, the owner of the outfit, and appears to have been its active manager. He ascertained by talking to various oil men from Texas and California that the usable value of the rig during the time it was under attachment was one hundred dollars a day, and that that was the customary price per day for such an outfit. Basing his knowledge on these inquiries he estimated the loss to the plaintiff by reason of the attachment as fifty dollars per day. Appellant contends that this testimony was hearsay and that its motion to strike it out should have been granted. We do not agree with this contention. The witness Cardwell, who testified as to the rental value of such an outfit in Texas, appears to have been well acquainted with what the reasonable daily market value of such a rig would be in that state.

[9] Defendant demurred to the complaint on the ground that it did not state a cause of action, and the overruling of such demurrer is assigned as error. The complaint contains no allegation of the breach of the condition on which the Surety Company was to become liable on its undertaking. The condition of the bond is that the plaintiff in the attachment suit will pay all costs that may be awarded to the defendant and all damages sustained by reason of the attachment. There is no averment in the complaint that such plaintiff had not made the payment. Without an allegation of default, on the part of the principal, in the condition on which the obligation of the bond was to accrue no cause of action is stated. It was so held in *Morgan* v. *Menzies*, 60 Cal. 341, which was an action brought upon an attachment bond, and involved the precise question we are now considering. The demurrer to the complaint should have been sustained. [10] An examination of the record, however, convinces us that the case should not be reversed for that reason. The complaint contains sufficient averments of the execution of the undertaking here sued upon, the

subsequent seizure and levy of the attachment by the sheriff in the attachment suit, and of the fact that on the trial of the action the plaintiff here recovered a judgment dismissing the attachment on the ground that the plaintiff in the attachment suit was not entitled thereto. Then follows succinct and definite allegations of the damage suffered by the plaintiff by reason of the wrongful attachment, through being deprived of the use of the oil rig and outfit, the reasonable usable value of which is alleged to be the sum of fifty dollars per day during the seventy-eight days the same was unlawfully held under the attachment proceedings. Its general demurrer being overruled, the defendant answered and denied generally and specifically that the plaintiff was damaged by reason of the attachment in any of the particulars mentioned in the complaint. At the trial the efforts of the defendant appear to have been devoted to showing that the rig and outfit had no usable value at the place where it was resting at the time the attachment was placed upon it, and consequently the plaintiff was not damaged by its detention. Having acted upon the theory that the issue as to its liability by reason of the alleged damage suffered by the plaintiff was sufficiently raised by the complaint, the defendant was not deceived or misled by the imperfection of the pleading, and under the oft-cited sections of the code and constitution, no miscarriage of justice having resulted, the error should be disregarded. (Code Civ. Proc., sec. 475; Const., art. VI, sec. 4½.)

The judgment is affirmed.

Shaw, C. J., Lennon, J., Lawlor, J., and Wilbur, J., concurred.

Rehearing denied.

All the Justices concurred.