L. M. GORDON *et al. v.* KENTUCKY MIDLAND COAL Co. *et al.*
(No. 13)\*

(*Jackson.* April Term, 1925.)

1. **APPEAL AND ERROR.** Finding that defendant excused from delivery of coal ordered by complainant because of coal shortage held conclusive.

Finding of chancellor and court of appeals, in suit for breach of contract, that seller was excused for not shipping all coal ordered because of shortage of cars, is conclusive in supreme court. (*Post, pp.* 373, 374.)

2. **SALES.** Buyer in default in payment for coal shipped not entitled to recover for seller's failure to make further shipment.

Buyer is not entitled to recover damages for seller's failure to deliver coal, where buyer did not pay for coal shipped in accordance with terms of contract, and was in default at time of institution of suit. (*Post, p.* 375.)

Case cited and distinguished: Alpha Portland Cement Co. v. Oliver, 125 Tenn., 138.

3. **ATTACHMENT.** Damages from wrongful suing out of attachment recoverable on bond.

On dismissal of an attachment which has been wrongfully sued out, defendant is entitled to recover of complainant and surety on his attachment bond damages sustained as direct result of wrongful suing out of attachment. (*Post, pp.* 375-378.)

4. **ATTACHMENT.** Only actual damages suffered recoverable for wrongful suing out of attachment, in absence of malice.

---

\*On rescission of sale for failure of purchaser to pay for instalments as delivered, see note in 32 L. R. A. (N. S.), 1.

Gordon v. Coal Co.

On dismissal of attachment, which was wrongfully sued out, only actual damages suffered can be recovered against complainant and surety on his bond, in absence of showing of malice. (*Post, pp.* 375-378.)

5. **ATTACHMENT.** Attorney's fees not recoverable as damages for wrongful suing out of attachment.

Attorney's fees of defendant do not constitute damages that can be recovered for wrongful suing out of attachment. (*Post. pp.* 375-378.)

6. **ATTACHMENT.** Premiums paid for replevy bond recoverable, where attachment wrongfully sued out.

On dismissal of attachment wrongfully sued out, *held*, that defendant was entitled to recover, as damages, premiums paid for replevy or refunding bond given by defendant to release from attachment. (*Post, pp.* 375-378.)

Cases cited and approved: Macheca v. Panesi, 72 Tenn., 544; Lobenstein v. Hymson, 90 Tenn., 606; Smith v. Eakin, 34 Tenn., 456; Doll v. Cooper, 77 Tenn., 585; Stringfield v. Hirsch, 94 Tenn., 425; Littleton v. Frank Bros., 70 Tenn., 301; Williams v. Burg, 77 Tenn., 456.

Cases cited and distinguished: Smith v. American Bonding Co., 160 N. C., 574; Tullis v. McClary, 128 Iowa, 493; St. John v. U. S. Fid. & Guar. Co., 56 Mont., 197.

*Headnote 1. Appeal and Error, 4 C. J., Section 3072; 2. Sales, 35 Cyc., p. 252; 3. Attachment, 6 C. J., Section 1310; 4. Attachment, 6 C. J., Section 1314; 5. Attachment, 6 C. J., Section 1335; 6. Attachment, 6 C. J., Section 1331.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court

of Civil Appeals from the Supreme Court.—Hon. ISRAEL H. PERES, Chancellor.

WILLIAM G. CAVETT, for plaintiffs.

SIVELEY, EVANS & McCADDEN, for defendant.

MR. JUSTICE HALL delivered the opinion of the Court.

The bill in this cause was filed by complainants L. M. Gordon and W. D. Gordon, doing business as the Gordon Coal Company, against the defendant, Kentucky Midland Coal Company (a corporation), with its *situs* and place of business located at Central City, Ky., to recover damages for an alleged breach of contract in the delivery of coal alleged to have been purchased by complainants of defendant in September, 1916.

The bill alleged that in September, 1916, complainants purchased from the defendant one hundred cars of coal, to be delivered as ordered; that defendant breached its said contract, in that it delivered only seven cars of the coal purchased from it, and refused or failed to deliver the balance, and the bill sought a recovery of the defendant for the sum of $9,300, which complainants alleged they sustained as damages by reason of the alleged breach of said contract by defendant.

The bill also made the Southern Coal Company, J. R. Collins, and S. H. Fraser defendants, and alleged that they were indebted to the defendant, Kentucky Midland Coal Company, in the sum of $———, and defendant sought to and did attach by garnishment the fund in their hands owing to the defendant, Kentucky Midland

Coal Company, that the same might be subjected to the satisfaction of any recovery that might be decreed against the coal company.

The defendant, Kentucky Midland Coal Company, answered the bill, and denied that it had entered into with complainants the contract alleged in the bill, and averred that, if he did make such a contract with complainants, complainants breached said contract and thereby relieved defendant from any liability, and it denied that it was liable to complainants for any amount whatever, but that complainants were indebted to it in the sum of $69.55 for a car of coal shipped and delivered to them on October 9, 1916.

The other defendants answered the bill, and admitted that the Southern Coal Company (Collins and Fraser being officers of said company) was indebted to the Kentucky Midland Coal Company at the time of the service of the attachment by garnishment on them in the sum of $15,112.12.

While the cause was pending the Kentucky Midland Coal Company moved for permission to file a replevy or refunding bond in lieu of the fund owing to it and attached in said cause, and to have said fund released and paid over to it. This motion was granted, and said defendant filed a refunding bond in the sum of $12,000 with the National Surety Company as its surety thereon

Proof was taken, and the cause was tried before the chancellor, who was of the opinion that complainants were not entitled to any of the relief sought. He therefore dismissed the bill and taxed them with the costs of the cause.

The answer filed by the Kentucky Midland Coal Com
pany having been, by agreement of the parties, treated
as a cross-bill in so far as said coal company sought to
recover for the price of one car of coal shipped to com-
plainants, the chancellor rendered a decree in favor of
said defendant and against complainants for the sum of
$69.55; that amount being the price of the car of coal
shipped, and for which complainants were indebted to
said defendant.

Complainants' bill having been dismissed, and it hav-
ing been adjudged by the chancellor that complainants
were not entitled to the writ of attachment for which they
prayed, which had theretofore issued in accordance with
the prayer of the bill, and it appearing that the aggre-
gate of the premiums paid by defendant, Kentucky Mid-
land Coal Company, to the National Surety Company for
the replevy or refunding bond made, together with in-
terest, was $984, and that the premiums paid were. the
usual premiums paid for such bond and were not exces-
sive; and, it further appearing that said attachment had
been wrongfully sued out, the chancellor held, and ac-
cordingly decreed, that said defendant was entitled to
recover of complainants and the surety on their attach-
ment bond said sum of $984, as damages.

To the action of the chancellor in dismissing their bill
and denying them the relief sought, to his action in de-
creeing that defendant, Kentucky Midland Coal Company
was entitled to recover for said car of coal, and to his
action in decreeing that defendant was entitled to re-
cover said sum of $984, as damages, complainants ex-
cepted and appealed to the court of appeals, and assigned
errors in that court. The court of appeals affirmed the

decree of the chancellor in all respects, and the cause is now before this court upon complainaints' petition for writ of *certiorari* and for review.

Through their assignments of error complainants insist that the court of appeals erred in its construction of the contract entered into between complainants and defendant, Kentucky Midland Coal Company, and in holding that said contract was conditional; that is, that said defendant agreed to ship to complainants one hundred cars of coal of the kind described in the contract, at the price therein stated, contingent on car shortages, strikes, accidents, and other causes beyond its control, and with the understanding that all coal furnished in any month should be paid for on the first of the following month, and also conditioned on complainants' account not exceeding $300 at any one time.

The court of appeals also held that, if the contract were unconditional, complainants could not recover upon it, even if breached by the defendant, because no proper proof was introduced by complainants from which the court could ascertain and fix the amount of the damages sustained. This holding is also assigned as error.

The court of appeals further held that complainants were not entitled to recover of the defendant because the contract clearly stipulated that the terms upon which the defendant agreed to deliver the coal to complainants was that all coal received during one month must be paid for by the first of the succeeding month, and that defendant shipped to complainants a car of coal on October 9, 1916, the price of which was $69.55; that under the contract payment for this car was due November 1, 1916; that defendant sent complainants a bill for this car of coal No-

vember 1, 1916, but complainants did not remit for the coal and had not done so when the bill in this cause was filed. No error is assigned by complainants to this holding of the court of appeals.

It is further assigned as error that the court of appeals erred in holding that the attachment, hereinbefore referred to, was wrongfully sued out by complainants, and that the defendant, Kentucky Midland Coal Company, could recover as damages the premiums paid to the National Surety Company, as its surety on its replevy or refunding bond which it filed to have the fund owing it, and in the hands of the Southern Coal Company, released from said attachment.

We will not undertake to discuss in this opinion the questions presented by the two first assignments of error above referred to further than to say that we are clearly of the opinion that both the chancellor and the court of appeals were correct in holding that complainants were not entitled to recover of the defendant upon the contract sued on. We think the correspondence between complainants and defendant, which is contained in the transcript of the record, and is also set out in the opinion of the court of appeals, constituted a conditional contract between complainants and defendant. In other words, the defendant agreed to ship to complainants one hundred cars of coal of the kind and grade described in the correspondence, and at the price therein stated, but that this agreement on the part of the defendant was contingent on the scarcity of cars, strikes, accidents, and other causes beyond the defendant's control.

The uncontradicted proof shows that complainants ordered fifteen of the one hundred cars contracted for, but

only seven of the fifteen cars were shipped by the defendant; that at the time complainants ordered the fifteen cars there was a serious scarcity of coal cars owing to the great demand at that time being made on the railroads as a result of the European war, and that the defendant was receiving less than fifty per cent. of the cars received by it in normal times, and this was the reason that it filled less than fifty per cent. of the orders made by complainant. On these points there is a concurrent finding by the chancellor and the court of appeals.

Complainants took the deposition of defendant's bookkeeper, and had him file a lengthy statement taken from the books of the defendant showing the number of cars shipped during the period in controversy, to whom shipped, and the price received for the coal, and, on this showing, it is earnestly insisted that defendant was not correct when it gave as an excuse for not shipping all the cars of coal ordered by complainants that it could not get the cars.

Both the chancellor and the court of appeals found this fact against complainants, and this finding is conclusive in this court.

Furthermore, it appears that defendant did not agree to fill complainants' orders to the exclusion of all other orders which it had taken for coal, and the evidence shows that it did not fill more than fifty per cent. of the other orders received by it.

We are of the opinion that defendant was excused, under the facts as found by the chancellor and the court of appeals, and under the terms of the contract, from delivering to complainants any greater proportion of the cars of coal ordered.

Furthermore, it is clear from the proof that complainants did not pay for the coal shipped in accordance with the terms of the contract, but were in default at the time of the institution of the present action. Defendant shipped to complainants a car of coal on October 9, 1916. The price of this car was $69.55. Under the contract payment for this car was due November 1, 1916, and for this car defendant sent complainants a statement on November 1, 1916, but complainants did not remit for this car, and had not done so when the bill in this cause was filed.

In *Alpha Portland Cement Co.* v. *Oliver,* 125 Tenn., 138, 140 S. W., 595, 596, 38 L. R. A. (N. S.), 416, Ann. Cas., 1913C, 120, it was said:

"We therefore have a case in which a contract, covering a period of ten months, goods to be delivered in approximately equal monthly installments, and paid for within thirty days from shipment, was breached by the defendant failing to make payments as stipulated. That such a failure to make payments works a breach of the whole contract is no longer a matter for discussion in this state."

The conclusions reached by the chancellor, and concurred in by the court of appeals, being conclusive of complainaints' claim for damages, no further elaboration on this branch of the cause is necessary.

We now come to a consideration of complainants' fourth and last assignment of error which is to the effect that the court of appeals erred in holding and decreeing that the attachment was wrongfully sued out by complainants, and that the defendant, Kentucky Midland Coal Company, was entitled to recover, as damages, the

premiums it had paid the National Surety Company for its replevy or refunding bond to have the fund owing it by the Southern Coal Company released from the attachment.

No question is made by complainants with reference to the amount of the premiums paid for the bond, or the reasonableness thereof, but complainants earnestly insist that said amount is not a proper item of damages, and that the court of appeals committed error in so decreeing.

This question, it seems, has never heretofore arisen in this State; at least, counsel have cited no reported case dealing with the question, and we have been unable to find one. It is well settled in this State, however, that upon the dismissal of an attachment, which has wrongfully been sued out, the defendant is entitled to recover of the complainant and the surety on his attachment bond the damages sustained as a direct result of the wrongful suing out of the attachment. *Macheca* v. *Panesi,* 4 Lea, 544; *Lobenstein* v. *Hymson,* 90 Tenn., 606, 18 S. W., 250.

The rule is that only actual damages suffered can be recovered where no malice is shown in suing out the attachment. *Smith* v. *Eakin,* 2 Sneed, 456; *Doll* v. *Cooper,* 9 Lea, 585.

It has been held that the attorney's fees of the defendant do not constitute an item of damages that can be recovered for the wrongful suing out of the attachment. The reasons for this holding are fully stated in *Springfield* v. *Hirsch,* 94 Tenn., 425, 29 S. W., 609, 45 Am. St. Rep., 733; *Littleton* v. *Frank Bros.,* 2 Lea, 301; *Williams* v. *Burg,* 9 Lea, 456.

We do not, however, think the holding in these cases is controlling of the question under consideration. Had the defendant permitted the fund attached to have remained in the possession of the Southern Coal Company, or had it been paid into the registry of the court, nothing else appearing, when the attachment was dismissed, de fendant would have been entitled to recover interest on the fund so attached. In order to get the use of the fund that had been wrongfully attached, it was necessary for the defendant to give a replevy or refunding bond, which cost $984, and we are of the opinion that the premiums paid for this bond were a proper item of damages. The payment of these premiums was made necessary as a direct result of the wrongful suing out of the attachment.

The question has arisen in other states and has been determined in accordance with the above view.

In *Smith* v. *American Bonding Co.,* 160 N. C., 574, 76 S. E., 481, it was said: "(1) Sixty dollars, which was the amount the plaintiff paid for procuring the undertak ing given by him to procure the release of the property attached. In the absence of evidence that it was exces sive or unreasonable, it was properly allowed as damages. We cannot agree with the defendant that it should have been taxed as costs in the former judgment. It was no part of the court proceeding, but was a proper item of damages in an action upon the bond of the plaintiff in the attachment."

In *Tullis* v. *McClary,* 128 Iowa, 493, 104 N. W., 505, it was said: "The necessity of releasing the property by the execution of the delivery bond was a direct conse quence of the levy of the writ (attachment), and if he spent time in obtaining it, and expended money therefor,

the value of such time and the cost of the bond were proper elements of damage.''

In *St. John* v. *United States Fidelity & Guaranty Co.,* 56 Mont., 197, 182 P., 128, it was said: ''We think, too, that plaintiff was entitled to recover the $50 paid by him for the procurement of the bond, to release the attachment upon the submission of sufficient competent proof of the payment of the same, especially in view of the fact that such action would in all likelihood tend to minimize the damage suffered by him and eventually relieve the surety company to that extent.''

There is no error in the judgment of the court of appeals, and the writ is denied, with costs.