[Civ. No. 6056. First Appellate District, Division Two.—December 6, 1927.]

ALBERT E. HILL, as Administrator, etc., Appellant, v. WAITING MINING COMPANY (a Corporation) et al., Respondents.

Edward R. Eliassen and Walter H. Eliassen for Appellant.

R. H. Chamberlain, Jr., for Respondents.

STURTEVANT, J.—The plaintiff commenced an action against the defendants to obtain a decree quieting title to real estate. The defendants appeared and answered. The trial court made findings in favor of the defendants and from a judgment based thereon the plaintiff has appealed.

On September 5, 1907, Albert J. Caswell and wife, as the owners, and C. M. Jensen and Angus Matheson, executed a writing by which the owners granted "the parties of the second part permission to work for minerals" on the land in suit. It was further provided: "1st. If said parties of the second part succeeded in getting minerals in paying quantities the parties of the first part will give said parties of the second part a one-half interest in ten acres of above-described property, as an inlet to the vein and all profits shall be divided one-half to parties of the first part and one-half to parties of the second part after all expenses have been paid, one-half by parties of the first part and one-half by parties of the second part. 2nd. If said parties of the second part do not get the mineral in paying quantities all expenses shall be paid by said parties of the second part without any cost whatsoever to said parties of the first part, and this agreement shall become null and void." The record does not disclose that Jensen and Matheson at any time succeeded "in getting mineral in paying quantities."

Without any further consideration, on June 21, 1920, A. J. Caswell, C. M. Jensen, and Angus Matheson executed a writing, hereinafter called the second agreement, which recites that it is in lieu of the first agreement.

■ On July 1, 1920, the parties of the second part assigned the second agreement to the Waiting Mining Company. The shaft hereinafter mentioned was sunk, but no further proceedings were had under said assignment except as will presently be noted. On December 15, 1921, the stockholders of that company, as a body of stockholders, made a purported assignment of the second agreement to the Los Gatos Lime Company. No document of any kind purporting to be the indenture of the Waiting Mining Company was executed. The purported assignment by the stockholders had no legal significance. (*Gashwiler* v. *Willis*, 33 Cal. 11, 19, 20 [91 Am. Dec. 607]; *Hotaling* v. *Hotaling*, 193 Cal. 369, 376, 377 [224 Pac. 455].) Therefore the Los Gatos Lime Company took nothing and no judgment should have been rendered in its favor.

■ Jensen and Matheson had assigned to the Waiting Mining Company and had parted with all of their rights and were no longer interested parties in this litigation. Therefore no judgment should have been rendered in their favor. The Waiting Mining Company received its assignment July 1, 1920, but it has never agreed to be bound by the burdens of it.

By the terms of the second agreement the parties agreed to form a corporation having a capital of $50,000 divided into 50,000 shares of one dollar each; the owner agrees (1) to sell for 5,000 of those shares all minerals of every kind contained in the owner's land; (2) to grant conveyances of rights of way for roads of ingress and egress to said minerals; (3) to grant all timber for domestic and mining purposes; (4) to grant all water so required, and (5) to grant the surface use of five acres centered around each shaft so long as mining thereat continues or so long as the operators may desire and require the same for mining operations; and the second parties agree to begin the mining operations as soon as practicable.

There is some evidence that the stock was issued, but a conveyance was not executed because there was some work to be done by the grantees which had not been done. There

is no evidence that such work was done before this action was commenced. Finally, if that company wants a conveyance there are no facts in the record from which the terms of that conveyance can be ascertained. The decedent owned a quarter-section. It is clear that the entire tract was not mineral land in the technical meaning of that term. There is absolutely no evidence as to what portion was mineral land. There is evidence that an eighty-foot shaft has been sunk, but no evidence as to where it is. There is no evidence where the rights of way were to commence, where they were to end, or what lands they were to pass over. There is no evidence at what place water was to be taken or in what manner or quantity. There is no evidence as to the shape, or boundaries, or of the location of the five-acre tract, or tracts, or how many of those tracts there were to be. The evidence shows that the grantees, or assigns, were to prospect. If successful, they were to mine and they were to continue the mining as long as minerals could be mined at a profit. But, if minerals could not be mined at a profit, the evidence is without conflict that the ''agreement shall become null and void.'' The grantees were to commence operations ''as soon as practicable''; but the record is wholly silent as to the term of years within which they should perform the contract.

█ Among the points made by the plaintiff he asserts that the terms of the alleged agreement held by the defendants are not sufficiently certain to make the precise act which is to be done clearly ascertainable. That the rule contended for obtains in this state is settled beyond dispute. (Civ. Code, sec. 3390, subd. 6; *Morrison* v. *Rossignol,* 5 Cal. 64; *Minturn* v. *Baylis,* 33 Cal. 129, 133; *Co-operative Assn.* v. *Phillips,* 56 Cal. 539, 546; *Breckinridge* v. *Crocker,* 78 Cal. 529 [21 Pac. 179]; *Talmadge* v. *Arrowhead Reservoir Co.,* 101 Cal. 367 [35 Pac. 1000]; *Beal* v. *United Properties Co.,* 46 Cal. App. 287, 293 [189 Pac. 346].) When all the evidence tending to establish such contract leaves the terms thereof in doubt, it cannot be specifically enforced, and where, on appeal, giving full credit and weight to all evidence affirmatively tending to establish such agreement, disregarding all conflicting evidence, it appears that the terms of such agreement are not clearly ascertainable, then the action of the trial court enforcing such uncertain agree-

ment may be reversed. (*De Kahn* v. *Chase,* 177 Cal. 281, 283 [170 Pac. 608].) Applying the foregoing rules to the facts which we have recited, it is patent that plaintiff's decedent agreed to execute a conveyance of some kind, but not a deed. (*Graciosa Oil Co.* v. *Santa Barbara,* 155 Cal. 140, 144 [20 L. R. A. (N. S.) 211, 99 Pac. 483].) But the terms of the conveyance and the general nature of the conveyance were such that the most the court can do is to say they rest in conjecture.

The plaintiff also makes the point that the agreement was an agreement to prospect and in that behalf to render personal service. Thereupon the plaintiff contends that such an agreement will not be specifically enforced. He cites and relies on Civ. Code, sec. 3390, subd. 2; *Los Angeles etc. Co.* v. *Occidental Oil Co.,* 144 Cal. 528 [78 Pac. 25]; *Cooper* v. *Pena,* 21 Cal. 403; *Sturgis* v. *Galindo,* 59 Cal. 28 [43 Am. Rep. 239]; *Poultry Producers, etc.,* v. *Barlow,* 189 Cal. 278 [208 Pac. 93]. The authorities clearly support the contention.

The judgment is reversed.

Nourse, J., and Koford, P. J., concurred.