379 P.2d 643

**NATIONAL MOTOR SERVICE CO., an Idaho Corporation, Plaintiff-Respondent,**

**v.**

**Hattie WALTERS and Clyde Painter, Defendants-Appellants.**

**No. 9131.**

Supreme Court of Idaho.

March 6, 1963.

---

J. H. Felton, Lewiston, Idaho, for appellants.

William H. Foster, Grangeville, Idaho, for respondent.

**SMITH, Justice.**

Plaintiff (respondent) brought this action by supplemental complaint filed September 26, 1960, as vendor seeking repossession of a tractor, or in the alternative its sale and application of the proceeds in satisfaction of the balance of its purchase price of $5,617.69 owing under a conditional sales contract, together with expenses and attorney's fees or, in the alternative, for judgment against defendants for such sum of $5,617.69 together with expenses and attorney's fees.

Defendants (appellants) vendees under the conditional sales contract, denied the material allegations of the complaint; affirmatively alleged breach of express and implied warranties of the tractor and cross claimed for damages therefor, as well as damages growing out of plaintiff's alleged wrongful repossession and wrongful attachment of the tractor.

The jury returned a verdict in favor of plaintiff and defendants appealed from the resulting judgment.

The subject of the litigation is a used caterpillar crawler tractor, model D 7, serial number 7M 3353, including LaTourneau blade and front end unit, and carco winch.

Defendant Hattie Walters desired to harvest and sell certain standing timber on her land. Defendant Painter desired to secure the contract for harvesting the timber, but did not have sufficient credit to purchase a crawler tractor needed for the work. Mrs. Walters, on July 1, 1959, arranged in her own name the purchase of the referred to tractor from plaintiff; the transaction was evidenced by a written conditional sales contract between the two parties; pursuant thereto Mrs. Walters agreed to pay $7,000 for the tractor. Defendant Painter made the down payment of $1800.00, leaving a cash balance owing of $5,200; to this amount was added insurance and price time differential charges, which accumulated the total time balance owing to $6,466.16. Mrs. Walters agreed to pay such amount in installments of variable amounts over a period of 24 months, beginning August 1, 1959, the first five installment payments to be $342.56 each. The contract provided that in case of vendee's default, the vendor could declare the balance owing to be due and collectible, or that the property would be repossessed and sold, and the proceeds

applied to payment of the indebtedness, together with costs and attorney's fees incurred.

July 2, 1959, plaintiff by written instrument assigned its interest in the contract, with full recourse to First Security Bank of Utah; defendants were notified of such assignment. Shortly thereafter, plaintiff delivered the tractor to defendants, but as defendant Painter asserted, it was not in condition "to go right to work."

August 18, 1959, defendant Painter's attorney wrote a letter to plaintiff stating that the tractor was not delivered "in good running order" as allegedly represented, and that defendants had been required to spend about $500 on repairs. The attorney suggested settlement of the controversy by plaintiff making the first two contract installment payments of $342.56 each, and that thereupon defendants would be able to proceed with the purchase.

September 4, 1959, plaintiff replied to such letter, asserting that the tractor was in good running order when it left the company's possession; that the company would defer the August 1, 1959 payment, but if the September 1, 1959 payment was not received immediately, the "bank" would proceed with repossession.

September 11, 1959, plaintiff filed a verified complaint against defendants, and secured an undertaking for claim and delivery of the tractor, but summons on such com-

plaint was never at any time served on defendants.

October 13, 1959, defendant Hattie Walters, purchaser, and the bank entered into a revision agreement whereby plaintiff and the bank lowered the unpaid balance of purchase price of the tractor by a sum equal to one payment, i. e., $342.46, and extended the due date of the first installment payment to November 1, 1959; this agreement plaintiff consented to and approved.

During March, 1960, plaintiff took possession of the tractor at a locality from which plaintiff's agent, in repossessing the tractor, plowed a road by use of the tractor, through several miles of packed snow, which caused damage to the tractor's rock guard blade and two rollers.

Thereafter, on or about April 14, 1960, plaintiff caused the tractor to be taken under its original action in claim and delivery (in which summons had not been served), the complaint therein alleging default in the August and September, 1959, payments. (Those defaults had been cured by the revision agreement of October 13, 1959). Shortly thereafter defendants posted redelivery bond and again obtained possession of the tractor.

September 2, 1960, plaintiff repurchased the conditional sales contract from the bank and on September 26, 1960, filed a supplemental complaint, with summons served, pursuing the remedies afforded by the contract, i. e., sought (1) judgment for sale of the tractor and deficiency, if any; or in the alternative (2) a money judgment in the amount of the alleged balance owing under the contract of $5,617.69, together with $204.63 expenses, and for attorney's fess.

Defendants in their answer to the supplemental complaint denied plaintiff's ownership of the tractor, and denied any default under the revision agreement. They cross-claimed for $2,000 damages grounded on alleged breach of implied warranty of fitness of the tractor, I.C. § 64–115; also by way of set-off, defendants alleged $3,850 damages for plaintiff's alleged wrongful repossession of the tractor during March, 1960, and $1500 damages for plaintiff's alleged wrongful taking during April, 1960, which alleged damages totaled $7,350. In effect by off setting against such amount of alleged damages, the amount of $5,617.69 which plaintiff alleged as the balance owed by defendants under the conditional sales contract, defendants prayed that they be adjudged to be the owners of the tractor and attachments, and additionally, that they recover from plaintiff the sum of $1,732.31.

A pre-trial order incorporated the issues asserted by the parties.

At the trial court's request defendants put in their evidence first. At the conclusion of defendants' evidence, plaintiff moved

for a directed verdict which the court denied and further ruled that it would not put to the jury the matter of defendants' claim for damages allegedly based on plaintiff's alleged wrongful repossession and alleged wrongful taking of the tractor during 1960.

At the conclusion of plaintiff's evidence, the trial court took from the jury all issues except (1) whether there was any warranty of the tractor as to its fitness; (2) damages therefor (Instruction #3); limiting however damages for such breach of warranty to such sum as defendants expended in making the tractor and equipment reasonably fit for the purpose for which it was intended, not exceeding $1,000 (Instruction No. 11), and directed the jury to return its verdict for plaintiff in the sum of $5,617.69 (alleged balance owing under the conditional sales contract), less damages for breach of implied warranty of fitness, plus attorney's fees.

The jury returned a verdict for plaintiff in the sum of $5,617.69 being the balance owing under the conditional sales contract, less $448.00 damages for breach of implied warranty of fitness, plus $900 attorney's fees, upon which verdict the trial court entered judgment of $6,069.69, from which judgment defendants appealed.

█ Defendants assign error of the trial court in allowing plaintiff to file a supplemental complaint. The assignment is without merit since the record shows transactions and events which occurred after the filing of the original complaint, September 11, 1959, to the time of filing the supplemental complaint, September 26, 1960, notably a revision of the original contract upon which the original complaint was based and the repurchase of the contract on September 2, 1960, by plaintiff from the bank. I. R.C.P. Rule 15(d); I.C. § 8–301.

█ Defendants assign as error the trial court's failure to instruct and failure to present a form of verdict in accordance with I.C. § 10–222, which relates to the various verdicts which may be returned in claim and delivery. While plaintiff's original complaint filed September 11, 1959, sought recovery by way of claim and delivery, its supplemental complaint filed September 26, 1960, in addition to claim and delivery, I.C. § 8–301, also sought relief in the alternative by way of money judgment.

The jury returned its verdict for money judgment, upon a form of verdict prepared by the court, which, in effect, directed the jury to find for plaintiff the amount due under the contract which the court fixed in the amount of $5,617.69, plus attorney's fees as the jury may find, less as an off-set such amount the jury may find as damages, if any, sustained by defendants on account of claimed breach of implied warranty of fitness of the tractor.

Defendants are not in a position to assert that the court should have submitted alternative forms of verdict, I.R.C.P. 49(a), as regards which party was entitled to possession of the tractor and its value. Such is true simply because defendants were in possession of the tractor at all times covered by the supplemental complaint, including the time of trial; and plaintiff is satisfied with the alternative relief, which it prayed for, of judgment for the balance due under the contract of sale of the tractor; and plaintiff is not complaining of the trial court's failure to give such an instruction, inasmuch as plaintiff did not appeal or cross-appeal. We find no merit in defendants' said assignment.

After the parties had rested the trial court took all issues from the jury except (A) whether there was in fact an implied warranty of fitness made by plaintiff and relied upon by defendants, and (B) the question whether there was a breach of warranty, and if so, damages attributable thereto.

Defendants contend generally that there is evidence upon which all the issues framed by the pre-trial order could and should have been presented to the trier of facts for determination.

The issues framed by the pre-trial order which the trial court took from the jury are:

(1) Whether defendants had defaulted under the contract;

(2) Whether plaintiff was the owner of the tractor, defendants' statement in that regard being, "that although plaintiff did file suit on September 11, 1959, plaintiff was not then the owner of said tractor, but that the tractor belonged to the First Security Bank of Utah, and that settlement was made of the differences of the parties on the 13th day of October, 1959, and that suit became moot;"

(3) Whether plaintiff through its agent wrongfully took possession of the tractor in the winter of 1959–1960, causing it to be operated for approximately 220 hours, a reasonable rental charge for the tractor allegedly being $17.50 per hour, totaling $3,850.00;

(4) Whether, as defendants stated, plaintiff caused "the sheriff of Idaho County wrongfully and unlawfully to take possession of the tractor and attachments, and that it was necessary in order to regain possession of the tractor for the defendants to obtain and put up a bond and to hire and retain attorneys, and that attorneys' fees in defending against such unlawful possession are reasonably the sum of $1,000, and that the trouble and expense of obtaining bond is the sum of $500."

Those stated issues, removed from the jury's consideration, will be hereinafter discussed in the order set out.

In effect the trial court granted a directed verdict for plaintiff on such issues. I.R.C.P. 50(a).

■ Defendants assert that issue (1), whether they defaulted on the contract, should have been submitted to the jury. Defendants' theory appears to be, that the amount due under the contract was off-set by damages growing out of plaintiff's alleged conversion of the tractor. However, since those alleged damages were entirely unliquidated they could not become the subject of off-set unless and until liquidated by verdict of the jury.

■ The undisputed evidence shows that no payments were made on the conditional sales contract after its October, 1959, revision. Mr. John Tompary, plaintiff's manager, testified to the effect that no such payments had been made; therefore, his testimony met the burden of proof required to make a prima facie case for plaintiff. Defendants failed to adduce evidence to controvert the issue of default. Therefore, the trial court did not err in removing such issue from the jury's consideration.

I.R.C.P. 50(a) is identical to Federal Rule 50(a). In construing the federal rule, the federal courts have consistently held that where no evidence is adduced to disprove the prima facie case of the plaintiff and his evidence stands uncontradicted and unimpeached, and the facts are so convincing that reasonable men could not differ as to their significance, the court should direct a verdict. Kelly v. Jackson, (1832) 6 Pet., 622, 8 L.Ed. 523; Delaware L. & W. R. Co. v. Pittinger, (C.C.A. 3rd, 1923) 293 F. 853; Brandon v. Holman, (C.C.A. 4th, 1930) 41 F.2d 586; Grannis v. United States, (C.C.A. 4th, 1949) 172 F.2d 507, cert. den'd (1949) 337 U.S. 918, 69 S.Ct. 1160, 93 L.Ed. 1727.

The next three issues (2), (3), and (4), removed from the jury's consideration, will be discussed together. They relate to plaintiff's alleged wrongful repossessions of the tractor during March and April, 1960, and alleged related damages, after plaintiff had assigned the contract to First Security Bank of Utah.

In approaching such issues, at the outset we entertain the opinion that the trial court erred in removing issues (2) and (3), but did not err in removing issue (4), from the jury.

The record discloses by uncontradicted evidence that when plaintiff caused its agent to take possession of the tractor during March, 1960, plaintiff did not have title to the tractor; at that time First Security Bank of Utah held title by virtue of the written instrument of assignment. Moreover, the record is devoid of any authority by the bank to plaintiff to repossess the

tractor; although the instrument of assignment provided full right of recourse to the bank against plaintiff in the event of defendants' failure to perform, nevertheless such does not constitute a sufficient interest as to allow plaintiff, as assignor, or guarantor, without the bank's authorization, to obtain possession of the tractor as against the right of defendants; particularly is this true in view of the following provision contained in the assignment:

"FOR VALUE RECEIVED the undersigned [plaintiff] hereby sells and assigns the within contract and all of its right, title and interest in and to the property subject thereto unto THE FIRST SECURITY BANK OF UTAH, N. A. * * * The undersigned hereby waives * * * (b) the right to require the Bank to proceed against the purchaser [defendants], or to pursue any other remedy in the Bank's power * * *."

Such assignment vested plaintiff's right, title and interest in the tractor in First Security Bank of Utah. At the time plaintiff caused its agent, Johnson, to take possession of the tractor in March, 1960, defendants were indebted to the bank, not to plaintiff; the bank and not plaintiff owned the conditional sales contract and title to the tractor. The undisputed evidence shows that Johnson was plaintiff's agent; that he obtained possession of the tractor during March, 1960, at plaintiff's direction, and prior to the time plaintiff repurchased the contract from the bank, September 2, 1960; also shows that plaintiff effected attachment of the tractor in April, 1960, again, prior to plaintiff's repurchase of the contract. The record is devoid of any evidence of agency between plaintiff and the bank or that the bank authorized or had anything to do with the repossession.

"A complete assignment to a third person of the conditional sales contract and the obligation of the vendee to pay the price vests the title to the property and all the rights of the assignor, including the right to receive payments from the vendee and the right to resume possession of the property upon default and breach of the contract, in the assignee. After having made a complete assignment, unless the property is revested in him, the assignor is without any interest in the title, the possession of the property, or the contract." 47 Am.Jur., Sales, § 929.

In an action of claim and delivery, I.C. § 8–301, the right to immediate and exclusive possession of the property must exist at the time the action is commenced. Bingham County Agricultural Ass'n v. Rogers, 7 Idaho 63, 59 P. 931; Warm River Lumber Co. v. Rightenour, 67 Idaho 187, 174 P.2d 940; Teater v. Good Hope Devel-

opment Corporation, 14 Cal.2d 196, 198, 93 P.2d 112.

■ The factual situation in the case at bar is almost identical to that involved in the case of Shelby v. Hudiburg Chevrolet, Inc., (Okl.), 361 P.2d 275. In that case plaintiff Shelby appealed from an order sustaining defendant's demurrer to plaintiff's evidence, adduced in an action by plaintiff to recover actual and exemplary damages for alleged conversion of an automobile by defendant, Hudiburg Chevrolet, Inc., a dealer in automobiles. The Oklahoma Supreme Court reversed the ruling of the trial court with directions to grant a new trial.

The evidence adduced showed that plaintiff Shelby entered into a written conditional sales contract for the purchase of an automobile from the defendant. The contract recited a total time balance owing, including insurance and finance charges, payable in certain monthly installments. It was understood between the parties that the time balance would be financed through a certain finance company. Defendant thereupon assigned the conditional sales contract to the finance company, with recourse, defendant guaranteeing payment of the full amount of the balance on demand by the finance company.

Plaintiff Shelby defaulted in his first payment under the contract. Shortly thereafter the automobile dealer's salesman, who sold the automobile to plaintiff, took possession of the automobile. A few days later plaintiff received a letter from defendant, automobile dealer, stating that the automobile had been repossessed because of plaintiff's delinquency and defendant's resultant demand for the total balance owing. The letter also recited that defendant had to pay the finance company in full; that defendant would hold the car "for you for ten days;" and that it would be necessary for plaintiff to negotiate a new loan or pay off the indebtedness.

Shortly thereafter plaintiff Shelby instituted the action. In urging a reversal of the trial court's order sustaining the demurrer, he contended that defendant's repossession of the automobile was wrongful, and constituted a conversion of the automobile, inasmuch as defendant had assigned the contract to the finance company, and therefore had no legal right to demand possession of, and to repossess, the automobile. The Oklahoma Supreme Court agreed with that contention; it reiterated the rule it had theretofore announced in United States Zinc Co. v. Colburn, 124 Okl. 249, 255 P. 688, [from the syllabus]:

"Conversion is any distinct act of dominion wrongfully exerted over another's personal property, in denial of, or inconsistent with, his rights therein."

Immediately following, the Court ruled:

"In the instant case, we are of the opinion that the evidence is sufficient to support a finding that defendant, having assigned its right, title and interest to the conditional sales contract and property covered thereby, had no legal right to take possession of said property, and therefore converted same."

The Oklahoma Supreme Court so ruled, being cognizant of the certain facts, that buyer Shelby had defaulted under the contract; that the assignor, defendant automobile dealer, had assigned the contract, with recourse, to a finance company, and that the automobile dealer guaranteed payment of the contract upon default of the purchaser.

In considering the trial court's action in sustaining the demurrer to plaintiff's evidence in the Shelby case, the appellate court recognized that it must construe the evidence most favorably to plaintiff, including all inferences and deductions to be reasonably drawn therefrom. In that connection defendant, automobile dealer, asserted that, at the time of its repossession of the automobile, the finance company had released the conditional sales contract, because the contract did bear an undated notation by the finance company to the county clerk, authorizing release of the contract. In construing the evidence most favorably to plaintiff the Court stated: "We therefore infer that *the release* * * * by the

finance company *was subsequent, and not prior, to the repossession* of the vehicle by defendant." (Emphasis supplied.)

In the case at bar, plaintiff, through its agent Johnson, in March, 1960, allegedly converted the tractor, thereby depriving defendants to the right of possession. Defendants presented sufficient evidence, as hereinbefore referred to, relating to such alleged conversion, and damages therefrom, as hereinafter set out, for consideration by the jury. Defendant Painter on direct examination stated in effect that he had ascertained what people pay for renting tractors in his particular area; that the forest service in the summer time paid $17.00 an hour. He stated that summer work "would be a lot easier [than winter work] because there is not that full load on the blade all the time. With snow you have a full load all the time. It takes a lot more diesel * * * fuel all the time." He then showed some familiarity with the use of a tractor in snow work and thereupon stated his opinion that the rental value of this particular tractor per hour on the snow work would be "pretty near double * * * upwards of $30.00 an hour * * * for that particular hard type of work."

 A recognized measure of damages for the wrongful taking or detention of personal property is the reasonable value of its use during the period of detention. Atlas Development Co. v. National Surety

Co., 190 Cal. 329, 212 P. 196; Gray v. American Surety Company of New York, 129 Cal.App.2d 471, 277 P.2d 436; Hagele v. Raymond, 139 Cal.App.2d Supp. 945, 294 P.2d 539. If the owner retakes the converted property, damages recoverable by the owner are based on the value at the time of the conversion, but in mitigation, the wrongdoer is entitled to credit for the value of the property at the time of return, though he is chargeable with the value of its use, of which the owner has been deprived, during the period of wrongful detention. Lawyers' Mortg. Inv. Corp. v. Paramount Laundries, 287 Mass. 357, 191 N.E. 398. Therefore, the trial court erred in taking from the jury the issues of plaintiff's alleged conversion of the tractor, and defendants' alleged damages attributable thereto.

Upon new trial (I.C. § 1–205), if the evidence warrants, the trial court should consider submitting to the jury the issue of whether plaintiff was acting with the bank's permission, or as its agent, in obtaining possession of the tractor in March, 1960, and if the jury should find plaintiff was not acting in any such capacity, then the jury should consider whether damages for conversion should be awarded defendants, and if so, should fix the amount.

Issue No. (4) presents a somewhat different problem. That issue directly relates to whether plaintiff caused the sheriff of Idaho County in April, 1960, wrongfully and unlawfully to take possession of the tractor. Defendants assert that plaintiff accomplished this under a wrongful attachment of the tractor and seek, as damages, attorneys' fees of $1,000, and "trouble and expense" obtaining bond, $500. The record indicates that such sheriff did not take possession of the tractor under the statutory provisions pertaining to attachments and garnishments, but by virtue of the statute relating to claim and delivery. I.C., Tit. 8, ch. 3.

■ The claim and delivery statutes of this state have replaced the common-law action of replevin. Bingham County Agricultural Ass'n v. Rogers, 7 Idaho 63, 59 P. 931; Bates v. Capital State Bank, 21 Idaho 141, 121 P. 561.

■ Defendants produced evidence relating to their demand for attorneys' fees involved in issue No. (4). This Court has consistently held, however, that attorney's fees are not recoverable unless provided for by statute or by contract of the parties. Financial Credit Corp. v. Douglas, 71 Idaho 312, 230 P.2d 1002; Gifford v. Gifford, 50 Idaho 517, 297 P. 1100; English v. King, 39 Idaho 531, 228 P. 325; Jenkins v. Commercial Nat. Bank, 19 Idaho 290, 113 P. 463. Attorneys' fees are not a proper element of damages in a replevin action. Joy v. Giglio, (Okl.), 208 Okl. 50, 254 P.2d 351; Hays v. Windsor, 130 Cal. 230, 62

P. 395; Finance Corporation v. Commercial Credit Co., 41 Wyo. 198, 283 P. 1100; Roberts v. Perrine, 247 Ill.App. 259; Commercial Inv. Trust v. William Frankfurth H. Co., 179 Wis. 21, 190 N.W. 1004, and are not recoverable in the statutory claim and delivery action, I.C., Tit. 8, ch. 3.

A different situation however attains in regard to the cost of obtaining the replevin bond which defendants posted for the protection of the sheriff in regaining possession of the tractor. A bond for the redelivery of property taken by the sheriff in an action of claim and delivery is required to be given as a condition precedent to redelivery by the sheriff, I.C. § 8–307 et seq.

■ The majority rule, fortified by the better reasoned decisions, is to the effect that, in an action for replevin or claim and delivery the expense of a bond in the amount required to effect redelivery of property to the person, found to be wrongfully dispossessed thereof, is recoverable by such person. Gordon v. Kentucky Midland Coal Co., 152 Tenn. 367, 278 S.W. 68, 42 A.L.R. 1052; Smith v. American Bonding Co., 160 N.C. 574, 76 S.E. 481; Tullis v. McClary, 128 Iowa 493, 104 N.W. 505, Anno. 42 A.L.R. 1057; Stilwell Bros. v. Union Machinery & Supply Co., 94 Wash. 61, 161 P. 1048. However, in the case at bar, defendants did not adduce any evidence as regards their alleged expense

in obtaining the replevin bond; therefore, the trial court did not err in removing such issue (4) from the jury.

The record herein is devoid of proof that plaintiff was acting with the permission of the assignee, The First Security Bank of Utah; thus it follows that plaintiff acted without authority in commencing the claim and delivery action during September, 1959, and in causing the sheriff of Idaho County to take possession of the tractor in April, 1960, as well as for the further reason that plaintiff did not have title to the tractor.

■ Further, where a party by assignment divests himself of all right he may have under a contract, he is no longer a real party in interest. York Blouse Corp. v. Kaplowitz Bros., (D.C.Mun.App.), 97 A.2d 465; Overseas Trading Company, S. A., v. United States, 141 Ct.Cl. 561, 159 F.Supp. 382; Hill v. Waiting Mining Co., 87 Cal.App. 297, 261 P. 1115; First Nat. Bank of Topeka v. United Telephone Ass'n, 187 Kan. 29, 353 P.2d 963; Northwest Oil & Refining Co. v. Honolulu Oil Corp., D.C., 195 F.Supp. 281; Lipe v. Guilford Nat. Bank, 236 N.C. 328, 72 S.E.2d 759; Chesney v. District Court of Salt Lake County, 99 Utah 513, 108 P.2d 514.

■ Defendants assign as error the trial court's failure to give defendants' requested instructions Nos. 2, 3 and 4. Those requested instructions were intended to cover the subject matter of breach of war-

ranty of quality or fitness, damages therefrom, and the buyer's right, if he elects, to keep the goods warranted and to set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price. The trial court in its instructions given adequately covered those requested instructions, including the elements of the damages thereby requested. Defendants contend, however, that in so instructing the jury the trial court erroneously instructed in respect to the method of ascertaining those elements of damage. Defendants having requested such instructions and they in effect having been given at defendants' request, the defendants, cannot be heard to complain of instructions given at their own request. American Bonding Co. v. Regents of University of Idaho, 11 Idaho 163, 81 P. 604; State v. Orr, 53 Idaho 452, 24 P.2d 679; State v. Taylor, 59 Idaho 724, 87 P.2d 454; Neff v. Hysen, 72 Idaho 470, 244 P.2d 146.

■ The trial court's instructions as to damages for the alleged breach of warranty of fitness limited the jury to finding for defendants a sum expended in repairs in order to make the tractor fit for the particular purpose for which it was sold, not exceeding $1,000. Because of defendants' requested instructions and since defendants did not introduce evidence of expenditures for such repairs in an amount exceeding $1,000, the trial court's instruc-

tions were not in error. Implied warranties for quality or fitness are co-extensive. I.C. § 64–115. The correct measure of damages for breach of warranty of quality by I.C. § 64–507(7), is established in the following language:

"In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty."

See also Sanchotena v. Tower Co., 74 Idaho 541, 264 P.2d 1021.

In view of our disposition of this appeal we deem it unnecessary to rule upon defendants' assignment that the trial court erred in failing to make findings of fact and conclusions of law as prerequisites to entry of judgment as regards those matters which the trial judge took from the jury.

■ Plaintiff's attempted assertion of numerous errors by the trial court is without merit, since plaintiff did not appeal or cross-appeal.

The judgment is reversed and the cause remanded for a new trial.

Costs to appellants (defendants).

KNUDSON, C. J., and McQUADE, McFADDEN and TAYLOR, JJ., concur.