Opinion
SHABO, J.
Defendant appeals from a judgment of conviction entered following his plea of guilty to a violation of Vehicle Code section 23152, subdivision (b) charged in count II of a two-count complaint. Count I, in which the defendant had been charged with a violation of section 23152, subdivision (a) of the Vehicle Code, was dismissed on People’s motion.
Prior to his entry of a guilty plea to count II, defendant had moved the court pursuant to Penal Code section 1538.5 to suppress evidence based upon the ground that his arrest had been Without probable cause.
We note preliminarily the absence from the record before us of any specification of evidence which the defendant had sought to have the trial court order suppressed under section 1538.5. Neither the settled statement on appeal nor the municipal court docket, which is before us, discloses the nature of the allegedly illegally seized evidence. Nor does the record on appeal contain a written notice of motion to suppress evidence, in which the evidence sought to be suppressed might have been described. The state of the record thus invites confusion.
*Supp. 15 We remind defense counsel of the well-established duty in connection with suppression motions to state for the trial and appellate courts’ benefit precisely the evidence which is the subject of the motion and the grounds therefor. (See People v. Manning (1973) 33 Cal.App.3d 586, 594 [109 Cal.Rptr. 531], and authorities cited therein.)[1] Counsel’s failure to discharge his responsibility in the case at bench compels us to speculate that the evidence sought to be suppressed must have consisted of chemical test evidence secured as a result of defendant’s arrest.
The Facts
The evidence at the suppression hearing established that on September 16, 1983, at approximately 1:20 a.m. Officer Ramler of the Hermosa Beach Police Department observed a small sports car traveling northbound on Pacific Coast Highway at what appeared to be a high rate of speed. While pacing the vehicle, which he testified was proceeding at approximately 75 miles per hour, the officer also observed it to weave within the traffic lane and, upon approaching an intersection, saw it turn into the left turn pocket at Manhattan Beach Boulevard without signalling. The vehicle made a left turn onto Manhattan Beach Boulevard and yielded to the red lights of Officer Ramler’s vehicle. After he approached the car, Officer Ramler detected the odor of an alcoholic beverage on the breath of defendant, whom the officer identified as the driver.
Sergeant Phillips, who arrived on the scene, took over the investigation. He requested that defendant get out of the sports car. Upon doing so, the defendant appeared to exercise caution in maintaining his balance. The sergeant described defendant’s gait as somewhat unsteady. After detecting an odor of an alcoholic beverage on defendant’s breath, Sergeant Phillips asked defendant if he had been drinking. Defendant replied that since 5 p.m. he had consumed five to six beers. Defendant’s speech pattern was normal; however, his face was flushed.
Sergeant Phillips administered four field sobriety tests to the defendant and described defendant’s completion of two of the tests (finger-to-nose and walk-an-imaginary-straight line) as “fair” and defendant’s performance on the other two tests (reciting the English alphabet and one-legged stand) as *Supp. 16 “good.” In his testimony, the sergeant described defendant’s balance during the one-legged stand as “unsteady,” although defendant did manage to maintain his balance. Although defendant recited the alphabet correctly and on the walk-the-line test defendant walked a “fairly straight line” and performed the proper distance, defendant did not walk heel-to-toe and did raise his arms; moreover, he repeatedly commenced the test before the instructions were completed. Finally, with regard to the finger-to-nose test which defendant performed “fairly well,” he nevertheless started twice without following instructions, did not have his eyes closed at all times, and missed the tip of his nose four out of six times.
According to Sergeant Phillips defendant also exhibited horizontal nystagmus; however, the officer did not regard this test as “conclusive” but only as a “minute indicator of defendant’s state of sobriety.”
Based upon defendant’s driving pattern as related by Officer Ramler to Sergeant Phillips, defendant’s symptoms of intoxication and the results of defendant’s performance on the field sobriety tests, Sergeant Phillips formed the opinion that the defendant was operating a motor vehicle while under the influence of an alcoholic beverage. Without a warrant, the sergeant placed the defendant under arrest for violating Vehicle Code section 23152, subdivision (a).
In denying the motion to suppress evidence, the trial court stated essentially that Sergeant Phillip’s opinion as to defendant’s blood alcohol level constituted probable cause to arrest under Vehicle Code section 23152, subdivision (b)[2] even though probable cause may not have existed for an arrest under section 23152, subdivision (a). According to the settled statement, the court was of the opinion that since the enactment of section 23152, subdivision (b) police officers “do not need as much probable cause to arrest a driver under that section” as they do under Vehicle Code section 23152, subdivision (a).
For reasons which we shall explain, we disagree with the trial court regarding the quantum of probable cause issue. We nonethe *Supp. 17 less affirm the trial court’s order which, we conclude, is supported by substantial evidence.[3]
1. Substantial Evidence Contained in the Entire Record Establishes Probable Cause to Arrest Defendant
“Cause for arrest exists when the facts known to the arresting officer ‘would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime.’” (People v. Harris (1975) 15 Cal.3d 384, 389 [124 Cal.Rptr. 536, 540 P.2d 632]; People v. Fein (1971) 4 Cal.3d 747, 752 [94 Cal.Rptr. 607, 484 P.2d 583].)
The record contains ample facts from which the arresting officer did and could reasonably believe, and the trial court could have properly found that defendant’s ability to drive a motor vehicle was impaired as a result of his having ingested an intoxicating beverage. Among these circumstances was the information related by Officer Ramler to Sergeant Phillips concerning defendant’s driving at a high rate of speed, his weaving within the traffic lane, his turning left at Manhattan Beach Boulevard without signalling, the presence of an alcoholic odor on defendant’s breath, his exercise of caution in maintaining his balance, his unsteady gait, his admission of having consumed “five to six beers,” the presence of horizontal nystagmus, defendant’s ability to perform only one field sobriety test entirely correctly, and his flushed appearance.
Emphasizing Sergeant Phillips’ testimony regarding defendant’s performance of some of the field sobriety tests as “good” and minimizing the other evidence in the record supporting the validity of his arrest, defendant essentially asks us to reweigh the evidence which, as an appellate court, we cannot do when substantial evidence supports the trial court’s section 1538.5 order. (People v. Loewen (1983) 35 Cal.3d 117, 123 [196 Cal.Rptr. 846, 672 P.2d 436]; People v. James (1977) 19 Cal.3d 99, 107 [137 Cal.Rptr. 447, 561 P.2d 1135].) The record as a whole discloses substantial evidence *Supp. 18 in support of the trial court’s order denying the motion to suppress; the order must therefore be affirmed. (People v. Howell (1973) 30 Cal.App.3d 228, 234 [105 Cal.Rptr. 748]; see, also, People v. Fulk (1974) 39 Cal.App.3d 851 [114 Cal.Rptr. 567].)[4]
2. The Same Standard of Probable Cause Governs Arrests Made for Violation of Vehicle Code Section 23152, Subdivisions (a) and (b)
Concerning the quantum of probable cause issue, we first observe that ambiguity inheres in the trial court’s statement that since enactment of subdivision (b) of section 23152 less probable cause is required to arrest than formerly was necessitated to make a valid arrest under section 23152, subdivision (a). If the court meant that, to establish probable cause for a warrantless arrest under 23152, subdivision (b), the People need not factually demonstrate the driver’s impairment due to the ingestion of alcohol, we agree.
The People’s burden of showing justification for a warrantless arrest under section 23152, subdivision (b) may be discharged without evidence of actual impaired driving because subdivision (b) does not require proof of impairment in order to justify a conviction. (Burg v. Municipal Court (1983) 35 Cal.3d 257, 265 [198 Cal.Rptr. 145, 673 P.2d 732].)
On the other hand, if the trial court believed that the 1981 enactment of subdivision (b) signified legislative repeal of the well-established definition of probable cause to arrest for a public offense (see Pen. Code, § 836), and thereby intended to expand the power of arrest for asserted violations of section 23152, subdivision (b), we believe that the court below was in error.
*Supp. 19 Penal Code section 836 codifies the power of arrest.[5] Section 836, subdivision 1 authorizes a peace officer “with reasonable cause to believe that the person to be arrested has committed a public offense in his presence” to arrest that person with or without an arrest warrant. The statute has been an integral part of the California law of arrest since its enactment in 1872, and has since been only amended twice. Had the Legislature intended to exempt violations of section 23152, subdivision (b) of the Vehicle Code from the provisions of section 836, subdivision 1, we believe that body would have expressly so provided either as part of its comprehensive revision of the driving-under-the-influence offenses in an attempt to “objectify” them (see Burg v. Municipal Court, supra, at pp. 263-264),[6] or by directly amending title 3, chapter 5 of the Penal Code relating to the law of arrest (§§ 833-851.85) to provide law enforcement with enhanced power to arrest for this offense.
Our conclusion finds support in settled rules of statutory construction as well as clearly established principles of constitutional law. To conclude that enactment of section 23152, subdivision (b) represented a legislative judgment excepting California drivers suspected of violating subdivision (b) from the “reasonable cause” requirement of Penal Code section 836, subdivision 1 would require us to indulge in the unwarranted assumption that the Legislature intended to effect whole or partial repeal of section 836, subdivision 1.
The presumption against repeals by implication is well-established. In addressing the issue whether later enactment of certain provisions of the Fair Political Practices Act infringed the earlier established attorney-client privilege and the attorney’s duty to maintain a client’s confidences, our Supreme Court stated in Hays v. Wood (1979) 25 Cal.3d 772, 784-785 [160 Cal.Rptr. 102, 603 P.2d 19]: “We have concluded that the Act was not intended to and did not affect or dilute the attorney-client privilege (Evid. Code, §§ 950-962) or the attorney’s duty to maintain and preserve the confidence of his clients (Bus. & Prof. Code, § 6068, subd. (e)). It is true, of course, that the Act became law at a date subsequent to the above-cited *Supp. 20 enactments. However, as was aptly stated in the similar case of Sacramento Newspaper Guild v. Sacramento County Bd. of Suprs. (1968) 263 Cal.App.2d 41 [62 Cal.Rptr. 819]: ‘The courts assume that in enacting a statute the Legislature was aware of existing, related laws and intended to maintain a consistent body of statutes. (Stafford v. Realty Bond Service Corp. (1952) 39 Cal.2d 797, 805 [249 P.2d 241]; Lambert v. Conrad (1960) 185 Cal.App.2d 85, 93 [8 Cal.Rptr. 56]; 1 Sutherland, Statutory Construction (3d ed.) § 2012, pp. 461-466.) Thus there is a presumption against repeals by implication; they will occur only where the two acts are so inconsistent that there is no possibility of concurrent operation, or where the later provision gives undebatable evidence of an intent to supersede the earlier; the courts are bound to maintain the integrity of both statutes if they may stand together. (Warne v. Harkness (1963) 60 Cal.2d 579, 588 [35 Cal.Rptr. 601, 387 P.2d 377]; Penziner v. West American Finance Co. (1937) 10 Cal.2d 160, 176 [74 P.2d 252]; Smith v. Mathews (1909) 155 Cal. 752, 758 [103 P. 199]; see Williams v. Los Angeles Metropolitan Transit Authority (1968) 68 Cal.2d 599, 603 [68 Cal.Rptr. 297, 440 P.2d 497].)’ (263 Cal.App.2d at p. 54; see also Fuentes v. Workers’ Comp. Appeals Bd. (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449], and cases there cited; Consumers Union of U.S., Inc. v. California Milk Producers Advisory Bd. (1978) 82 Cal.App.3d 433, 446 [147 Cal.Rptr. 265]; Spencer v. G. A. MacDonald Constr. Co. (1976) 63 Cal.App.3d 836, 851-852 [134 Cal.Rptr. 78]; American Friends Service Committee v. Procunier (1973) 33 Cal.App.3d 252, 260-261 [109 Cal.Rptr. 22]; Cannon v. American Hydrocarbon Corp. (1970) 4 Cal.App.3d 639, 648 [84 Cal.Rptr. 575.]” Application of these rules in evaluating the enactment of section 23152, subdivision (b) upon the power of arrest, as codified in Penal Code section 836, subdivision 1, leads ineluctably to the conclusion that the Legislature did not intend by the former wholly or partially to repeal the latter. No express declaration nor evidence of legislative intent to repeal section 836, subdivision 1 exists; the two provisions are not even potentially conflicting. Both operate in different areas of the law, have distinct purposes, and relate to entirely different subject matter. (Cf. Hays v. Wood, supra; Fuentes v. Workers’ Comp. Appeals Bd. (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449].) Moreover, section 836, subdivision 1 codifies venerable rules relating to arrest of alleged misdemeanants, law which emanated from the common law of England (Coverstone v. Davies (1952) 38 Cal.2d 315, 320-321 [239 P.2d 876]), of which the Legislature must have been aware when enacting section 23152, subdivision (b). To conclude, in view of the foregoing, that the enactment of section 23152, subdivision (b) altered the law of arrest by requiring less probable cause would create a conflicting body of law in the area of arrest, search and seizure, would invite unpredictable results in the disposition of motions to suppress evidence in section 23152, subdivision (b) prosecutions, and would lead to confusion on the *Supp. 21 part of law enforcement, the bar and the bench. (Cf. United States v. Belton (1981) 453 U.S. 454, 459-460 [69 L.Ed.2d 768, 774-775, 101 S.Ct. 2860]; see Salwasser Manufacturing Co. v. Municipal Court (1979) 94 Cal.App.3d 223, 233 [156 Cal.Rptr. 292].) Such untoward results would frustrate, not enhance, the Legislature’s very purpose when it enacted section 23152, subdivision (b), which obviously was to protect public safety. (See Burg v. Municipal Court, supra, 35 Cal.3d at pp. 263-264.)
A second reason for rejection of the view that “less” probable cause need be shown in arrests under section 23152, subdivision (b) is the avoidance of constitutional questions that inevitably would arise from so construing the section. First, we know of no foreign or California authority that has recognized a “lesser” standard of probable cause in order to vindicate an arrest or search occasioned by a suspected violation of penal laws enacted pursuant to the police power; nor have the courts, so far as we are aware, ever distinguished the relative quantum of probable cause on the basis of whether the arrest or search was for a “police-power” offense or for a traditional “common law” offense. (See Coverstone v. Davies, supra, 38 Cal.2d at pp. 319-322.) Indeed both the Supreme Court of the United States and California courts have generally insisted upon a warrant showing probable cause in the penal enforcement of laws enacted to protect public health and safety, although the showing of probable cause varies with the competing public and private interests at stake. (See, e.g., Marshall v. Barlor’s, Inc. (1978) 436 U.S. 307, 311, 310-321 [56 L.Ed.2d 305, 310, 309-317, 98 S.Ct. 1816] [OSHA inspections]; Michigan v. Tyler (1978) 436 U.S. 499, 504 [56 L.Ed.2d 486, 494, 98 S.Ct. 1942] [arson investigation]; Camara v. Municipal Court (1967) 387 U.S. 523, 530-534, 537-539 [18 L.Ed.2d 930, 936-938, 940-941, 87 S.Ct. 1727] [building inspection]; See v. City of Seattle (1967) 387 U.S. 541, 544, 545 [18 L.Ed.2d 943, 946, 947, 87 S.Ct. 1737] [building inspection]; People v. Superior Court (Hawkins) (1972) 6 Cal.3d 757 [100 Cal.Rptr. 281, 493 P.2d 1145] [blood sample in DUI case]; People v. Duroncelay (1957) 48 Cal.2d 766 [312 P.2d 690] [blood sample taken without warrant as incident to valid DUI arrest]; Salwasser Manufacturing Co. v. Municipal Court, supra, 94 Cal.App.3d 223 [penal consequences of violating Cal/OSHA held to mandate a probable cause requirement for inspection warrants]; Vidaurri v. Superior Court (1970) 13 Cal.App.3d 550, 553 [91 Cal.Rptr. 704] [agricultural inspection]; see, also, Parrish v. Civil Service Commission (1967) 66 Cal.2d 260 [welfare inspection re: eligibility required compliance with standards for searches for evidence of crime]; cf. Coverstone v. Davies, supra, at p. 319.)
In light of judicial adherence to the warrant and probable cause requirements under the federal and state Constitutions, it is apparent that to condone warrantless arrests of drivers for violating section 23152, subdivision (b) on a showing of less than traditional probable cause would jeopardize *Supp. 22 effective prosecutions under the statute by reason of protections afforded citizens under the Fourth Amendment to the United States Constitution and article I, section 13 of the California Constitution against unlawful arrests, searches and seizures. It is well established that present law mandates the exclusion from evidence at trial of the fruits of an illegal arrest or search (Brown v. Illinois (1975) 422 U.S. 590 [45 L.Ed.2d 416, 95 S.Ct. 2254]; People v. DeVaughn (1977) 18 Cal.3d 889 [135 Cal.Rptr. 786, 558 P.2d 872]) unless the prosecution is able to demonstrate attenuation. (Brown v. Illinois, supra, at pp. 599-600 [45 L.Ed.2d at pp. 424-425]; People v. DeVaughn, supra, at p. 897.)
In addition to the foregoing, further fundamental constitutional considerations compel our conclusion;
First, it is an elementary rule of constitutional law that a state may not exercise its power in a manner which is incompatible with the federal Constitution and the basic rights of its citizens. (U. S. Const., art. VI; Free v. Bland (1962) 369 U.S. 663, 665 [8 L.Ed.2d 180, 182, 82 S.Ct. 1089]; Gibbons v. Ogden (1824) 22 U.S. (9 Wheat.) 1, 92-93 [6 L.Ed. 23, 73].) Under California law the Legislature may not violate the state’s Constitution. (Wood v. Hamaguchi (1929) 207 Cal. 79, 89-90 [277 P. 113, 63 A.L.R. 861]; see, also, People v. Holder (1921) 53 Cal.App. 45, 53 [199 P. 832].) To conclude that the Legislature intended that drivers in California be subjected to arrest and search on less than reasonable cause to believe that they may have violated section 23152, subdivision (b) would contravene these well-founded constitutional limitations upon the state’s power.
Finally, our conclusion is also based upon the constitutional mandate of equal protection. (U. S. Const., Amend. XIV; Cal. Const., art. I, § 7.)[7] We believe that the Legislature cannot sacrifice the rights to personal freedom, liberty, and privacy guaranteed by the United States and California Constitutions (U. S. Const., Amends. IV, IX, XIV; Cal. Const., art. I, *Supp. 23 §§ 1, 13)[8] merely on the basis of a police officer’s opinion—reasonable or not—that the individual may be driving with a .10 percent level of blood alcohol when, for other suspected offenses, including violent ones, the suspect enjoys the greater protection afforded by a higher standard of probable cause. We question whether the Legislature has authority under equal protection principles to authorize such discriminatory treatment of the former class of suspected offenders as compared to others similarly situated, including suspected felons, who by definition pose the most serious threat to public health and safety. The right to liberty is unquestionably a fundamental right, the abridgement of which requires the state to show a compelling interest. (People v. Olivas (1976) 17 Cal.3d 236, 243-257 [131 Cal.Rptr. 55, 551 P.2d 375].) We doubt that, if the issue were squarely presented, the state could meet its burden even in light of the extreme danger which intoxicated drivers pose to the public’s safety. (Cf. People v. Superior Court (Hawkins), supra, 6 Cal.3d at p. 765.)
Because a reviewing court is duty bound to construe statutes to avoid absurd results (In re Rodriguez (1975) 14 Cal.3d 639, 651 [122 Cal.Rptr. 552, 537 P.2d 384]), we have no hesitation in concluding that an arrest for a violation of Vehicle Code section 23152, subdivision (b) requires a showing of probable cause neither greater nor lesser than that which must be demonstrated in order to effect a valid arrest for any other public offense.
The judgment of conviction is affirmed.
Reese, P. J., concurred.

Respondent has filed no brief on appeal. Although in our discretion we might automatically order reversal, treating appellant’s point as well taken (Berry v. Ryan (1950) 97 Cal.App.2d 492, 493 [217 P.2d 1015]), we follow the better practice of examining the record on the basis of appellant’s brief and reversing only if prejudicial error is found. (Votaw Precision Tool Co. v. Air Canada (1976) 60 Cal.App.3d 52, 55 [131 Cal.Rptr. 335]; In re Marriage of Schultz (1980) 105 Cal.App.3d 846, 853 [164 Cal.Rptr. 653].) Nevertheless, we note the lack of assistance from respondent.

The trial judge asked Sergeant Phillips if he had an opinion concerning what a chemical test of defendant’s blood would show. The witness replied that based upon his observations and experience of five years as a police officer and having made approximately 300 driving-under-the-influence arrests, in his opinion the results of a chemical analysis would yield a .12 to a .13 blood alcohol level.

Because the court’s decision on the merits was correct in light of the evidence, we must disregard the trial court’s opinion concerning the relative quantum of probable cause necessary to support an arrest under subdivisions (a) or (b) of section 23152 of the Vehicle Code. It is fundamental that an appellate court is required to affirm a valid order even though the reasons given by the court below for the order may have been erroneous. (D’Amico v. Board of Medical Examiners (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10]; Davey v. Southern Pacific Co. (1897) 116 Cal. 325, 329 [48 P. 117]; People v. Evans (1967) 249 Cal.App.2d 254, 257 [57 Cal.Rptr. 276].)
No unfairness results to appellant in our adherence to the foregoing rule since the record on appeal contains ample evidence of probable cause to arrest; on this record we cannot logically assume that the trial court would have found defendant’s arrest illegal under section 23152, subdivision (a).

Defendant’s reliance on People v. Carter (1980) 108 Cal.App.3d 127 [166 Cal.Rptr. 304] is misplaced. Contrary to Carter, in which the detaining officer testified that he did not believe that he had probable cause to arrest when he asked the driver how much he had had to drink, the record at bench is clear that Sergeant Phillips reasonably believed that he had probable cause to arrest which, as we have held, the officer did possess. Moreover, the decision in Carter involved itself with the question of the application of the rule of Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] to the foregoing question. The holding of Carter was that neither Miranda nor its progeny requires admonition under circumstances in which a detention only is effected in order for the police to conduct an immediate on-the-scene investigation to determine whether a driver may be intoxicated. The Miranda issue is not presented in the case at bench.

Penal Code section 836 provides as follows: “A peace officer may make an arrest in obedience to a warrant, or may, pursuant to the authority granted him by the provisions of Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, without a warrant, arrest a person: m i. Whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence. [f] 2. When a person arrested has committed a felony, although not in his presence. [f] 3. Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed. [1872; 1957 ch 2147 § 2; 1968 ch 1222 § 59.]”

Division 17, chapter 2, article 1 of the Vehicle Code (§§ 40300-40312) sets out the provisions for arrest for violations of the Vehicle Code.

The Fourteenth Amendment provides in section 1: “All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.”
Article I, section 7 of the California Constitution provides in relevant part: “(a) A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws; . . . [f] (b) A citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to all citizens. Privileges or immunities granted by the Legislature may be altered or revoked.”

California Constitution, article I, sections 1 and 13 provide respectively: “Section 1. All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy, [f] Sec. 13. The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized.”