182 Cal.App.3d 1230 (1986)
227 Cal. Rptr. 380
THE PEOPLE, Plaintiff and Appellant,
v.
TOFI GEORGE STEPHEN, Defendant and Respondent.
Docket No. 22659.
Court of Appeals of California, Appellate Department, Superior Court, Los Angeles.
May 1, 1986.
COUNSEL
Ira Reiner, District Attorney, Donald J. Kaplan and Richard Sullivan, Deputy District Attorneys, for Plaintiff and Appellant.
Tofi George Stephen, in pro. per., for Defendant and Respondent.
OPINION
COOPERMAN, P.J.
The People appeal from an order dismissing counts I and II of the complaint against defendant Tofi George Stephen. Page Supp. 17
The record reflects the following relevant chronology of events: On September 1, 1983, a three-count misdemeanor complaint was filed charging defendant, respectively, with violating Penal Code sections 487, subdivision (1) (grand theft), 496 (receiving stolen property), and 148.5 (filing a false report of a criminal offense). Specifically, defendant was alleged in count I to have stolen personal property worth $3,000 belonging to one Dall Christensen and in count II to have bought, received, etc., stolen property, i.e., a 15 gallon air bottle, refacing machine, stone sharpener, gray tool box, reamers and grinding tool, orange tool box, miscellaneous grinding stone, and sandblasting machine. With regard to count III he was alleged to have filed a police report that a felony had been committed with knowledge that such report was false.
On September 7, 1983, a hearing was held with respect to a civil compromise proposed by the court concerning the grand theft and receiving stolen property charges. In pertinent part the docket entry simply reads: "Counts 1 and 2 Court grants Civil Compromise pursuant to 1378 P.C." No reasons were specified nor facts set forth which would elucidate why the court considered a civil compromise to be proper in this instance.
On September 10, 1984, count III was dismissed for lack of a speedy trial.

I.
On appeal[1] the People's sole assignment of error concerns the dismissal of counts I and II. (1a) Their initial position is that the order dismissing those counts must be reversed on the ground that the trial court failed to set forth its reasons for the civil compromise in the minutes (docket).[2]
We find the People's position in this respect to be meritorious and reverse for that reason.[3] Page Supp. 18
The statutory authority for compromising certain misdemeanor public offenses by leave of court is set forth in Penal Code sections 1377 through 1379.[4] Section 1379 strictly prohibits any public offense from being compromised or the proceeding stayed upon a compromise unless it is done in compliance with sections 1377 and 1378.
Section 1377 provides: "When the person injured by an act constituting a misdemeanor has a remedy by a civil action, the offense may be compromised as provided in the next section, except when it is committed: [¶] 1. By or upon an officer of justice, while in the execution of the duties of his office; [¶] 2. Riotously; [¶] 3. With an intent to commit a felony; [¶] 4. In violation of any court order as described in Section 273.6, unless the offense charged is the first such offense committed by the defendant against the family or household member under Section 273.6."
Section 1378 provides: "If the person injured appears before the court in which the action is pending at any time before trial, and acknowledges that he has received satisfaction for the injury, the court may, in its discretion, on payment of the costs incurred, order all proceedings to be stayed upon the prosecution, and the defendant to be discharged therefrom; but in such case the reasons for the order must be set forth therein, and entered on the minutes. The order is a bar to another prosecution for the same offense." (Italics added.)
The legal consequence of a court's failure to set forth its reasons for a civil compromise in the minutes pivots on the meaning of the word "must." If the import of "must" in section 1378 is mandatory, rather than directory, then the court's failure to set forth its reasoning in an order entered on the minutes renders the order invalid. (See, e.g., People v. Franklin (1978) 84 Cal. App.3d Supp. 13, 15-16 [149 Cal. Rptr. 229]; People v. Orin (1975) 13 Cal.3d 937, 943-945 [120 Cal. Rptr. 65, 533 P.2d 193]; People v. Superior Court (Schomer) (1970) 13 Cal. App.3d 672, 678-679 [91 Cal. Rptr. 651]; People v. Beasley (1970) 5 Cal. App.3d 617, 638 [85 Cal. Rptr. 501]; see also, People v. Watson (1983) 146 Cal. App.3d 12, 18 [193 Cal. Rptr. 849].)
Ordinarily, words such as "must" and "shall" are perceived as conveying a mandatory or an imperative connotation in the obligatory sense. (See, e.g., People v. Municipal Court (Lozano) (1956) 145 Cal. App.2d 767, 778 [303 P.2d 375]; People v. Callegri (1984) 154 Cal. App.3d 856, 866 [202 Cal. Rptr. 109].) However, the fact "[t]hat the statute is couched in obligatory language is not decisive. `Many statutory provisions which are "mandatory" Page Supp. 19 in the obligatory sense are accorded only directory effect.' [Citation.]" (Watson, supra, at p. 18.)
In Skelly Estate Co. v. San Francisco (1937) 9 Cal.2d 28 [69 P.2d 171], the California Supreme Court explained that "[t]he general use of the word `must' in an act does not ipso facto make the provision mandatory.... `The use of the word "must" is not necessarily determinative of its mandatory import. The words "shall" and "must" are frequently construed as directory terms. [Citations.]'" (Id., at p. 33.)
"It is a cardinal rule that statutes should be given a reasonable interpretation and in accordance with the apparent purpose and intention of the law makers." (People v. Ashley (1971) 17 Cal. App.3d 1122, 1127 [95 Cal. Rptr. 509].)
"The test is this: `If to construe ["must"] as directory would render [the statute] ineffective and meaningless it should not receive that construction.' [Citations.] Thus, a statute was held to be mandatory where `to construe this provision of the section as directory merely would be to defeat the very purpose of its enactment.' [Citations.] `... [I]t appears that if public policy is in favor of the imperative meaning, the words referred to will be held mandatory.' [Citations.]" (People v. Municipal Court (Lozano), supra, 145 Cal. App.2d at p. 775, cited with approval in People v. Callegri, supra, 154 Cal. App.3d 856 at pp. 866-867.)
It is therefore incumbent on us to ascertain the purpose and intent surrounding the civil compromise statute at hand before proceeding further with our analysis of the word "must" in section 1378.
In People v. Moulton (1982) 131 Cal. App.3d Supp. 10 [182 Cal. Rptr. 761] we had occasion to examine the background and purpose of the subject statute. Specifically, we made the following observations: "In most instances, the civil and criminal law operate independently of one another so that resolution of a victim's civil rights and remedies has no effect upon criminal prosecution. [Citation.] Indeed, it is generally considered to be a criminal offense to condition settlement of a civil claim upon nonprosecution of a criminal action. [Citations.] It is only when there has been compliance with a civil compromise statute authorizing a settlement under the supervision of the court that such a disposition is permitted. [Citation.]" (Id., at Supp. pp. 19-20.)
We also identified the policy underlying civil compromise statutes as the promotion of the public interest by checking rather than encouraging criminal prosecutions of cases which are in reality of a private rather than public Page Supp. 20 nature, although they are technically labeled as public offenses. (Id., at Supp. p. 20.)
In enacting the subject civil compromise statute the Legislature empowered the trial court with discretion to dismiss criminal charges stemming from that class of misdemeanor offenses in which a remedy by a civil action is available to the victim[5] but only on the conditions that costs be paid and the victim acknowledges before the court that he has received satisfaction for the injury. The imposition of such restraints clearly reflects the Legislature's intent to circumscribe the exercise of discretion by the trial court in approving civil compromises.
Properly presented, the issue here is whether construing the word "must" in section 1378 to be mandatory rather than directory would best serve to carry out the purpose of the civil compromise statute and effectuate the Legislature's intent.
Although no case or statutory authority has interpreted the word "must" in the context of section 1378, we find guidance in the reasoning and analysis of those cases interpreting the word "must" in the analogously worded provision in section 1385.
Section 1385 reads in pertinent part: "The judge ... may ... of its own motion ... and in the furtherance of justice, order an action to be dismissed. The reasons of the dismissal must be set forth in an order entered upon the minutes. ..." (Italics added.)
"The trial court's discretion to dismiss pursuant to section 1385 is very broad [citations], ... On the other hand, the furtherance of justice requires that justice be done to the People's interests as well as to the defendant's. [Citations.]" (People v. Borousk (1972) 24 Cal. App.3d 147, 163 [100 Cal. Rptr. 867].) Additionally, "[i]n the light of the importance to the administration of criminal justice of not having a case brought by the People ... thrown out of court except for a reason which can be said to be that which would motivate a reasonable judge, ... a judge does not have absolute discretion to dismiss a criminal case." (People v. Curtiss (1970) 4 Page Supp. 21
Cal. App.3d 123, 126 [84 Cal. Rptr. 106], cited with approval in People v. Fretwell (1970) 8 Cal. App.3d Supp. 37, at Supp. p. 41 [87 Cal. Rptr. 356].)
"The purpose behind the requirement for specification of reasons in the minutes has been stated to be: to protect the interests of the public (People v. Superior Court [Howard], 69 Cal.2d 491, 496, fn. 3 [72 Cal. Rptr. 330, 446 P.2d 138]), to protect the public interests against improper or corrupt dismissals (People v. Silva, 236 Cal. App.2d 453, 455 [46 Cal. Rptr. 87]), to restrain judicial discretion and curb arbitrary action for undisclosed reasons and motives (People v. Ritchie [(1971)] 17 Cal. App.3d 1098, 1105 [95 Cal. Rptr. 462]), and to enable the appellate court to determine whether discretion has been properly exercised (People v. Beasley [(1970)] 5 Cal. App.3d 617, 637 [85 Cal. Rptr. 501])." (People v. McAlonan (1972) 22 Cal. App.3d 982, 986 [99 Cal. Rptr. 733].)
The principal purposes, however, are clearly to protect the public interests against improper or corrupt dismissals and "to restrain judicial discretion and curb arbitrary action for undisclosed reasons and motives." (People v. Ritchie (1971) 17 Cal. App.3d 1098, 1105 [95 Cal. Rptr. 462]; People v. Orin, supra, 13 Cal.3d 937, 944.)
"It is settled law that this provision is mandatory and not merely directory.... [¶] Thus, it has been said: `The statement of reasons is not merely directory, and neither trial nor appellate courts have authority to disregard the requirement. It is not enough that on review the reporter's transcript may show the trial court's motivation; the minutes must reflect the reason "so that all may know why this great power was exercised.'" [Citations.]" (People v. Orin, supra, 13 Cal.3d 937, 944; accord, People v. Franklin, supra, 84 Cal. App.3d Supp. 13, 15-16.)
"The statute does not say and the cases have not allowed the interpretation that `the reasons shall appear somewhere in the record.' There is a difference between minutes of the court and oral pronouncement. Thus even if [the court] expressed valid reasons which may appear in the record, for example, in the transcript of what is said, if those reasons do not appear in the minutes the mandatory requirements have not been met." (People v. Andrade (1978) 86 Cal. App.3d 963, 974-975 [150 Cal. Rptr. 662].)
"A specification of reasons couched in conclusionary language, and which fails to set out the factual basis upon which the conclusions are reached, thwarts the very purpose of the statutory requirement and fails to give effect to the legislative intent behind it.... `Lacking any factual content, it [the order] offers no appropriate gauge by which we may test the propriety of the exercise of discretion.' [Citation.] More important, the order provides Page Supp. 22 an inadequate basis for public scrutiny, because its propriety cannot be judged without reference to the entire record. [Such] order [is] invalid because it fail[s] to set out the factual basis upon which it was made. [Citation.]" (People v. McAlonan, supra, 22 Cal. App.3d 982, 986.)
From the foregoing we glean these general principles: In certain specified situations the Legislature has determined that instead of criminal convictions the public interest would be best served by dismissal of certain criminal charges in the discretion of the trial court. That discretion, however, is not absolute. As a safeguard against abuse the Legislature dictates that the exercise of such discretion be conditioned upon the statement of the reasons, i.e., the factual basis, justifying such dismissal in the minutes. The rationale behind requiring the reasons to be set forth in the minutes as contrasted with allowing them to be placed in a settled statement or to be transcribed from a reporter's notes is to ensure that the reasons are readily ascertainable and available to the public and the reviewing court.
(2) Applying these principles to the subject civil compromise statute, we conclude: The Legislature intended to empower the trial court, in its discretion, to compromise certain misdemeanor offenses where a civil remedy is available to the victim, the victim acknowledges before the court that he has received satisfaction for the injury, and costs are paid. In order to protect the public against abuses of discretion, however, the Legislature requires that when the court exercises its discretion to compromise the matter "the reasons for the order must be set forth therein, and entered on the minutes." (Pen. Code, § 1378, italics added.)
It is clear that "must" in section 1378 can only be imbued with a mandatory meaning, rather than a directory one, in order to effectuate the Legislature's intent to protect the public against abuses of discretion. If the word "must" were construed to be simply directory, then the public would not know the reasons, if any, for a civil compromise where none were set forth in the minutes unless and until a reporter's transcript or a settled statement were prepared. A reporter's transcript, however, would necessitate the presence of a reporter at the proceedings and the availability of the reporter's notes, which might become lost or destroyed over a period of time. A settled statement presupposes an appeal and the availability of the judge who compromised the matter. These prerequisites, however, are not always present. (1b) The Legislature clearly conditioned the exercise of discretion to compromise a criminal offense on the placement of the reasons for such compromise in the minutes in order to obviate the need to rely upon such happenstances as the availability of a reporter's transcript or a settled statement.
In the present case the minutes do not reveal any reason for the approval of a civil compromise as to counts I (grand theft) and II (receiving stolen Page Supp. 23 goods). Although the words "civil compromise" in the minutes identify the ground for dismissal of those counts, the minutes are silent concerning the factual basis for approving the civil compromise. The order of dismissal as to counts I and II is therefore invalid. (People v. McAlonan, supra, 22 Cal. App.3d at p. 986.)
(3) The factual basis which would justify the approval of a civil compromise necessarily includes the following determinations by the court: (1) the misdemeanor offense sought to be compromised falls within that class of crimes subject to being compromised, i.e., the victim has a remedy by a civil action and no exception applies, e.g., the offense was not committed with felonious intent (§ 1377); (2) the victim appeared before the court and acknowledged that he has received satisfaction for the injury (§ 1378); and (3) defendant paid the incurred costs (§ 1378).

II.
The People also take the position that the order dismissing counts I and II should be reversed for the alternative reason, on the merits, that the victim did not acknowledge that he had received satisfaction for his injury.
We disagree. The record refutes this assertion. In relevant part the reporter's transcript of the civil compromise proceedings reveals that the following transpired:
"THE COURT: All right. Let's call the matter of Tofi George Stephen.
"Mr. Christianson is here?
"MR. JACINTO [prosecutor]: Yes, Your Honor.
"THE COURT: Will you come forward, please. I asked  it was me, not the prosecutor who asked you to come in this afternoon. I want to see if we could resolve one thing. I'd like to save you from coming back again.
"It is alleged in the two counts, items were stolen from  either stolen from you or held by someone after they had been stolen, and I've been informed that you've received the property back.
"MR. CHRISTIANSON [victim]: Yes, your Honor.
"THE COURT: Is that correct?
"MR. CHRISTIANSON: Yes. Page Supp. 24
"THE COURT: I'd like to know what your view is and position is, whether you would like this matter to continue or feel this matter has been taken care of, as far as you're concerned, the theft part of it.
"MR. CHRISTIANSON: Well, I haven't been pressing the matter. The police have asked if I would be a witness. I've told them I would be a witness.
"THE COURT: Yes, I understand.
"MR. CHRISTIANSON: So whatever the court decides, I'll go along with it.
"THE COURT: Do you have any objection of this matter being compromised, short of a conviction?
"MR. CHRISTIANSON: No.
"THE COURT: Have you received all injury back from this matter?
"MR. CHRISTIANSON: No, not really. Because while these tools were not in my possession for my use, I had to go out and purchase some others. I did not replace the entire thing, but I did spend in the neighborhood of $500.00 to $550.00 in buying some special tools, which are now a duplicate, and I'm out that money.
"I also lost work while the tools were not available to me.
"THE COURT: Mr. Hale, do you have some comments?
"I'd like to see if this could be compromised today. I don't know about all of that.
"MR. HALE [defense counsel]: Unfortunately, your Honor, we are suddenly involved in the merits of the case again and 
"THE COURT: That's true.
"MR. HALE:  we can't [truly] discuss the facts before this court without a trial. If Mr. Christianson is satisfied that he in effect has not been injured, I would support that position.
"THE COURT: I understand all the complexities. Do the People wish to be heard? Page Supp. 25
"MR. JACINTO: Yes, your Honor.
"I would oppose the civil compromise. It seems that a simple compromise in this case would allow the defendant to merely replace what was taken and not suffer what the legislature has determined to be the proper consequences in such a situation.
"I would submit it, your Honor.
"THE COURT: The court will grant a civil compromise in counts number I and II under section 1378 of the Penal Code."
(4) From our review of the record we note that the victim acknowledged receiving back all the tools that had been stolen from him. Moreover, although he indicated that he had to buy some duplicate tools and lost work due to the fact that his tools had been stolen,[6] the victim expressly stated that he was "not pressing the matter," that he agreed to be a witness only upon the request of the police, and that "whatever the court decides, [he would] go along with it." When asked specifically if he objected to the matter being compromised short of conviction, the victim unequivocally stated: "No."
We therefore find that the record contains ample evidence to support the trial court's implied finding that the victim here "acknowledges that he has received satisfaction for the injury." (Pen. Code, § 1378; People v. Manning (1973) 33 Cal. App.3d 586, 601-602 [109 Cal. Rptr. 531]; cf. John Gilmore's Case (1817) 2 N.Y. City Hall Recorder 39, cited in People v. Moulton, supra, 131 Cal. App.3d Supp. 10, at Supp. pp. 18-19, 23.)
The thrust of the People's complaint is that the victim was not "made whole" by the defendant, not that the victim did not receive satisfaction Page Supp. 26 for the injury.[7] The People essentially assert that unless the victim acknowledges that he has received "complete" compensation for the injury the court abuses its discretion in granting a civil compromise. In support the People cite People v. Strub (1975) 49 Cal. App.3d Supp. 1 [122 Cal. Rptr. 374].
We observe that the People's reliance on Strub is misplaced. Concerning the issue of "satisfaction," the Strub court merely stated: "It should also be noted that Penal Code section 1378 provides, in part, that a compromise may be permitted in a proper case `if the person injured appears before the court in which the action is pending ... and acknowledges that he has received satisfaction for the injury....' Although no cases definitively construe that portion of Penal Code section 1378, there is a tenable argument that the appearance and acknowledgment of satisfaction required by section 1378 constitutes a necessary condition precedent to the court's compromise of a misdemeanor charge. While People v. O'Rear (1963) 220 Cal. App.2d Supp. 927 [34 Cal. Rptr. 61], may indicate that the injured party need not actually appear before the court, the use of the term `satisfaction' would seem to require at least acquiescence to the restitution proffered by defendant." (Id., at Supp. p. 4; italics added.)
In Moulton, supra, we announced that "[b]y requiring personal presence of the victim or in lieu thereof other trustworthy evidence, [section 1378] affords the court the opportunity to assure itself that satisfaction is complete or a settlement voluntary. Instances where the victim has been subject to coercion to dismiss charges are not without precedent." (Moulton, supra, 131 Cal. App.3d Supp. 10, at Supp. p. 23.)
What we meant by the phrase "satisfaction is complete" is that the victim has in actuality received recompense acceptable to him for his injury,[8] not that the victim has received every recovery possible under civil law or everything the victim believed he would be entitled to civilly.
Indeed, nothing in sections 1377 through 1379 nor in the legislative history of the subject civil compromise statute even suggests, much less mandates, Page Supp. 27 that the victim be made "whole" or receive all recovery provided for under civil law as a condition precedent to the approval of a civil compromise by the court.
Moreover, the civil compromise statute does not in fact condition the approval of a compromise on the commencement of a civil action or on the resolution of such action in any particular fashion. The requirement that the victim have "a remedy by a civil action" simply serves to define the class of misdemeanor offenses which may be compromised, i.e., those cases which are in reality of a private rather than a public nature. Nor does the statute specify that the victim's "satisfaction for the injury" must arise from the institution of a civil action or what the nature or form of such "satisfaction" be.[9] (§ 1378.)
As the Strub court pointed out, such "satisfaction" may in fact arise when the victim accepts the restitution proffered by the defendant. The victim, of course, is not required to accept such recompense. If he does not find it to be "satisfactory," then he is entitled to reject it and pursue other avenues to obtain "satisfaction for his injury."
Additionally, we observe that it would serve to defeat, rather than promote, the Legislature's purpose in enacting the subject civil compromise statute to construe the requirement that the victim "acknowledges that he has received satisfaction for the injury" to mean receipt of everything to which he would be entitled civilly.
(5) The legislative intent behind allowing civil compromise of criminal offenses is not to ensure that the victim is maximally compensated for his injury. Rather, the purpose is to remove from criminal prosecution those offenses for which there is a civil remedy available; the rationale being that the public interest in those cases is best served by requiring the accused to make restitution directly and immediately to the individual victim instead of subjecting him to criminal sanctions for the welfare of society in general.
It is not the function of a criminal court to determine issues of civil liability or damages. (People v. Richards (1976) 17 Cal.3d 614, 620 [131 Cal. Rptr. 537, 552 P.2d 97]; accord, People v. Corners (1985) 176 Cal. App.3d 139, 143-144 [221 Cal. Rptr. 387].) In certain cases a victim Page Supp. 28 may receive restitution from a defendant through the criminal process. In such a case restitution is imposed as a condition of probation, and it is solely within the province of the court in this context to determine whether restitution is appropriate and the form or amount of such restitution. However, it is established that restitution ordered as a condition of probation is not coextensive with nor a substitute for the recompense that the victim may obtain civilly.[10]
Similarly, we conclude that it would be inappropriate for a criminal court in a civil compromise matter to determine whether the victim has received the maximum recovery allowable under civil law for his injury.
Instead, the court's inquiry focuses on the reason for requiring acknowledgement of satisfaction, which is twofold: (1) to ensure that the victim has in fact received recompense from the defendant, albeit not necessarily the maximum possible therefor; and (2) to ensure that the victim's settlement with defendant is voluntary. Where the victim voluntarily accepts recompense from the defendant, the court may infer that the victim considered the proffered reparation to be "satisfactory." However, where the recompense is disproportionate to the extent or nature of the injury, the court may infer that the settlement was coerced. Page Supp. 29
The order dismissing counts I and II is reversed for the reasons set forth in Part I, ante, and the matter is remanded for further proceedings not inconsistent with this opinion.
Bernstein, J., and Reese, J., concurred.
NOTES
[1] Although Penal Code section 1378 only empowers the court to "order all proceedings to be stayed upon the prosecution, and the defendant to be discharged therefrom," the legal effect is an order of dismissal as to those counts for which a civil compromise is approved. (See People v. Moulton (1982) 131 Cal. App.3d Supp. 10, 14, 21, 23 [182 Cal. Rptr. 761].) An order of dismissal pursuant to section 1378 is appealable. (Pen. Code, §§ 1466, subd. (a)(1), 1469; see also, People v. Winters (1959) 171 Cal. App.2d Supp. 876, 880 [342 P.2d 538].) Moreover, the order dismissing counts I and II is itself appealable even though count III remained pending at the time. (People v. Davis (1979) 94 Cal. App.3d 215, 220 [156 Cal. Rptr. 395].)
[2] Entries in a criminal docket are equivalent to entries in the minutes. (Pen. Code, § 1428; People v. Smith (1955) 133 Cal. App.2d Supp. 777, 779 [284 P.2d 203].)
[3] At our discretion we could consider defendant's failure to file a brief to be a concession of error. Instead, we elect to address the appeal on the merits. (People v. Trevisanut (1984) 160 Cal. App.3d Supp. 12, fn. 1 [207 Cal. Rptr. 921].)
[4] All future references to "code" or "section" are to the Penal Code unless otherwise specified.
[5] The Legislature, however, withheld such discretion with regard to those offenses committed: "1. By or upon an officer of justice, while in the execution of the duties of his office; [¶] 2. Riotously; [¶] 3. With an intent to commit a felony; [¶] 4. In violation of any court order as described in Section 273.6, unless the offense charged is the first such offense committed by the defendant against the family or household member under Section 273.6." (§ 1377.) The reason is self-evident: each of these exceptions renders the offense more public than private in nature, and thus, the rationale behind allowing civil compromises no longer exists.
[6] It is established that "the civil remedy of damages for conversion" is the equivalent of the misdemeanor offense of theft, which is "the unlawful taking of the property of another." (People v. O'Rear (1963) 220 Cal. App.2d Supp. 927, 931 [34 Cal. Rptr. 61].) Alternative measures of damages for conversion are set forth in Civil Code section 3336. (See also, Civ. Code §§ 3281, 3282, 3380.) "Where, however, one recovers his property which had been unlawfully taken from him, he is considered to have received it in mitigation of damages, and the measure of damage, in the absence of special damage, is the expense of procuring its return with interest." (Beetson v. Hollywood Athletic Club (1930) 109 Cal. App. 715, 722 [293 P. 821]; accord, Blewett v. Miller (1900) 131 Cal. 149, 151 [63 P. 157].) "Special damages ... are defined as damages which do not arise from the wrongful act itself, but depend on the circumstances peculiar to the infliction of each respective injury." (Myers v. Stephens (1965) 233 Cal. App.2d 104, 120-121 [43 Cal. Rptr. 420].) Loss of profits qualify as recoverable special damages. (Id., at pp. 118, 121.) It is therefore clear that under civil law the victim here could seek recovery of his lost profits but not the value of his tools, since he elected to accept return of the stolen tools (see Englert v. Ivac Corp. (1979) 92 Cal. App.3d 178, 189 [154 Cal. Rptr. 804]).
[7] The People contend that the victim should be compensated for his lost profits and the cost of the duplicate tools. However, it should be noted that the People do not assert that a civil compromise would not be proper unless the victim recovered his loss-of-use damages, which are recoverable as compensable damages in a conversion action. (Story v. Gateway Chevrolet Co. (1965) 237 Cal. App.2d 705, 709 [47 Cal. Rptr. 267]; accord, Atlas Dev. Co. v. National Surety Co. (1923) 190 Cal. 329, 332 [212 P. 196]; see also, Meyers v. Bradford (1921) 54 Cal. App. 157, 160-161 [201 P. 471]; Beetson, supra, 109 Cal. App. at pp. 723-724.) Nor do they refer to an award of punitive damages, which are likewise recoverable in such an action. (Civ. Code, § 3294, subd. (a); see generally, 14 Cal.Jur.3d, Conversion, § 48, pp. 836-838.)
[8] Parenthetically, we observe that the Legislature reserved to the trial court discretion to disapprove a civil compromise even if the court determines that the victim has in fact received satisfaction for his injury.
[9] Obviously, not every civil dispute is resolved by the commencement of an action or results in a judgment in favor of the plaintiff following a trial on the merits. It is frequently the situation that the matter is settled out of court or prior to trial between the parties who compromise their respective positions to the mutual satisfaction of each. Moreover, it is sometimes the case that the plaintiff may originally seek to recover a specific item yet agree to accept money or other goods as substitution therefor.
[10] A court may impose restitution as a condition of probation upon a defendant's conviction, albeit only where the restitution ordered arises from the criminal offense for which defendant was convicted. People v. Corners (1985) 176 Cal. App.3d 139, 142-143, 147-149. "But courts must tread lightly in this area lest they be reduced to `mere collection agencies' [citations]...." (People v. Richards (1976) 17 Cal.3d 614, 620 [131 Cal. Rptr. 537, 552 P.2d 97].) "Restitution imposed in a proper case and in an appropriate manner may serve the salutary purpose of making a criminal understand that he has harmed not merely society in the abstract but also individual human beings, and that he has a responsibility to make them whole." (Richards, supra, at p. 620.)

"However, `[d]isposing of civil liability cannot be a function of restitution in a criminal case. To begin with, the criminal justice system is essentially incapable of determining that a defendant is in fact civilly liable, and if so, to what extent. A judge may infer from a jury verdict of guilt in a theft case that a defendant is liable to the crime victim. But a trial court cannot properly conclude that the defendant owes money to a third party for other unproved or disproved crimes or conduct. A party sued civilly has important due process rights, including appropriate pleadings, discovery, and a right to a trial by jury on the specific issues of liability and damages. The judge in the criminal trial should not be permitted to emasculate those rights by simply declaring his belief that the defendant owes a sum of money.' (Ibid.) [¶] No matter how compelling the evidence of civil liability may be, the jury in a criminal case makes no finding of such liability. At the criminal trial, defendant need only raise a reasonable doubt regarding the elements of the crime charged. No duty is placed upon him, nor could it be, to prove that he is not civilly liable. Any legal conclusion in a criminal trial that he is so liable contravenes defendant's due process rights. (Id., at p. 621.) [¶] `Thus, "Restitution or reparation is not a substitute for a civil action to recover damages" [citation], and a defendant's duty of restitution cannot be predicated merely on a purported debt.' (Ibid.)" (Corners, supra, 176 Cal. App.3d at pp. 143-144, quoting from and citing to Richards.)